FAIRFIELD, Appellant, vs. BARRETTE, Respondent.

*January 30 — February 19, 1889.*

*Boundaries: Acquiescence: Adverse possession: Evidence: Appeal: Immaterial errors: Instructions to jury.*

1. Plaintiff owns the east half, and defendant the west half, of a quarter section. While the premises were occupied by their respective grantors, the plaintiff's grantor had objected that the fence between the tracts was too far east, and had procured a survey, which, however, showed that the true division line was still further east; whereupon he had importuned the defendant's grantor to allow the fence to be rebuilt on the old line, and the latter had finally consented to do so "for the present." The fence had been rebuilt accordingly, and had remained on the old line without further question for more than twenty years, when the plaintiff, being dissatisfied because the fence was too near his house, asked the defendant to join him in having a new survey made. The defendant declined to do so, and the plaintiff himself procured a new survey, which substantially agreed with the former one, showing the true line to be east of the fence. Thereupon the defendant, with the consent and by the direction of the plaintiff, proceeded to build a fence upon the line fixed by the surveys. The plaintiff afterwards brought suit to recover possession of the strip between the old fence and the new one. *Held,* that the possession of such strip by the plaintiff and his grantor had not been

adverse to the defendant and his grantor, and that the line of the old fence had not been established as the division line by agreement or acquiescence.

2. Evidence as to how the old fence would agree with the fence on the division line of a corresponding quarter section to the north, owned by a third person, was immaterial.

3. Where the trial court would have been justified in directing a verdict for the defendant, the plaintiff was not injured by omissions in the instructions given or by the refusal to give others.

APPEAL from the Circuit Court for *Crawford* County. Ejectment. The facts are stated in the opinion.

For the appellant there was a brief by *Fuller & Ward,* and oral argument by *C. S. Fuller.* To the point that it was error not to instruct the jury that an agreement as to the boundary line might be inferred from the circumstances and the actions of the parties, they cited *Pickett v. Nelson,* 71 Wis. 546, and cases there cited.

*Wm. H. Evans,* for the respondent.

ORTON, J. The plaintiff owns the east half of the northwest quarter of section 10, town 6, range 6 W., and the defendant the west half, which extend south to a highway which crosses said quarter section, by an irregular and somewhat of a circular line, near the south end. The plaintiff's dwelling-house and other buildings stand on the north side of this highway, and on the east side of and very near the north and south division line of said quarter. Nearly thirty years ago there was a division fence standing near the supposed north and south line of said quarter, which was replaced by one Thomas A. Savage, who then owned the west half of said quarter, and said fence so remained, and the plaintiff and his grantors occupied, cultivated, and improved the east half thereof up to said fence. A short time before this suit was brought the defendant built a fence on what he claimed was the true line between his half of said quarter and that of the plaintiff, commenc-

Fairfield vs. Barrette.

ing at the south end a few feet east of the old fence, with an increasing distance from it as it extended north, and thereby took possession of the strip of land between where the old fence stood and the new fence. This suit in ejectment was brought by the plaintiff to obtain the possession of this strip of land, and on the trial the plaintiff relied upon an adverse possession of it by him and his grantors of over twenty years for his title. The jury rendered a verdict for the defendant, and the plaintiff has appealed from the judgment entered upon such verdict.

The testimony established substantially the following facts: From March, 1857, to August, 1859, the east half of said quarter was owned by one Chester A. Pease, and from July, 1855, to July, 1869, the west half belonged to the said Thomas A. Savage. Some time about 1859 the said Pease was dissatisfied with the location of the old line fence, for the reason, probably, that it came too near his dwelling-house and other buildings, and requested the said Savage to join him in having a new survey made of the division line, so as to have the fence removed to it, and for some time Savage declined to do so and was willing to rebuild the old fence where it had been; but finally Pease employed the county surveyor, Judge Brunson, to survey said line, and paid him for his services. This newly surveyed line was so far east that it came too near Pease's house, and he was evidently disappointed, and importuned Savage to consent to have the fence rebuilt on the old line. Savage was satisfied with the survey, but, as he testified, Pease " whined " about it and wanted him to rebuild where the old fence stood for his own convenience, and he finally consented to do so, as he testified, "*for the present*," and so it was rebuilt and remained as aforesaid. That limitation or reservation, "*for the present*," is presumed to have continued, and to give color to any consent or acquiescence on the part of the defendant, and to the holding of the plaint-

iff. The plaintiff, or some of his grantors, set out an orchard and vines and gooseberry bushes, and it was occasionally cultivated up to or near said fence. There is no evidence of any question being raised after that about the fence or the line until a short time before this suit, when the plaintiff first questioned the location of it.

There seems to have been a close similarity and analogy between the circumstances attending the rebuilding of the old fence by Savage and the building of the new fence by the defendant. The plaintiff was dissatisfied with the old fence for the reason that it was too near his house and other buildings, and requested the defendant to join him in having the line resurveyed. The defendant declined to do so, and it was postponed by the plaintiff saying: " We'll let it go this year, and next year we'll .survey it." About two years afterwards the defendant was about to rebuild the old fence where it had been. The plaintiff still insisted on a new survey of the line, and finally employed a surveyor by the name of Appleby to survey the line. The line he fixed was about the same one fixed by Judge Brunson. When the defendant was about to put up the new fence on the new line, the plaintiff said: " All right, that is where it should be," and pointed to a post he had fixed as the starting-point,— and said: " That post is right on the corner, and that is the post to start from." After the defendant commenced putting up the fence, the plaintiff was present, and pointed out the new line, and ·sent for stakes and put them along on it where the fence should be built. When the apple trees, vines, and gooseberry bushes were about to be disturbed by the new fence, the plaintiff said that " they were not of any account, and to cut them down." He said that the new line was correct, for the surveyor had run it twice, to be sure of it. When the defendant told him that he would put the fence on the new line, the plaintiff said: " Yes; that is ·where it must be put." " We got it surveyed

for that, and we will have it on that line." "That is where it has got to be." The line ran over the top of the plaintiff's root-house, and he said: "I guess I'll have to set a post on the top of it. Yes; I guess I'll have to,"— and it was so run so as not to make a jog in the fence. Two years before this the plaintiff claimed that the old fence was not on the line, and that it ought to be rebuilt on the true line. It is proper to say that the plaintiff, as a witness, denied these statements; but the testimony of the defendant was corroborated in most respects in relation to them by the witness Brandes, who was employed by him to put up the fence, and the jury were warranted in finding them true.

It is very clear from the testimony that the plaintiff not only consented, but *specially directed* the defendant to build the fence on the line fixed by the Appleby survey, which he procured to be made. The old line where the fence stood so long was disputed by the plaintiff's intermediate grantor, Pease, when the grantor of the defendant, Savage, rebuilt the fence, and was again disputed by the plaintiff himself; and two surveys which substantially agreed were procured by the plaintiff and his grantor, and such new line was recognized by them as the true division line of the quarter. The testimony in respect to such surveys was admitted without objection, and the jury had the right to find that the line fixed by them is the true one, and that the parties respectively owned the land by virtue of their title papers on each side of that line. At least, the plaintiff is estopped from denying it. It may properly be assumed that the plaintiff had always been dissatisfied with the old line for the same reason that moved him to have the line resurveyed, for nothing had transpired to change his opinion. These facts show anything rather than an adverse possession by the plaintiff and his grantors, or the establishment of a division line by agreement or acquiescence; for it was disputed by the plaintiff or a former owner every time the

old fence was to be rebuilt, and a resurvey was demanded by them to ascertain the true line. The facts are utterly inconsistent with adverse possession of this strip of land by the plaintiff or his grantors. The rule is that evidence of adverse possession must be strictly construed, and every presumption is in favor of the true owner, and that the plaintiff entered under his deed, and that his possession is only co-extensive with his title, and restricted to the premises granted by his deed. *Graeven v. Dieves*, 68 Wis. 321; *Sydnor v. Palmer*, 29 Wis. 252. There must be ignorance of the true line, and an agreement, express or implied, to adopt a certain line as the true one, and a peaceable and continued occupancy up to such line, without adverse claim by the adjoining owner or with his consent or acquiescence, for twenty years, to establish a boundary line by adverse possession. *Bader v. Zeise*, 44 Wis. 96; *Gove v. White*, 23 Wis. 282; *Tobey v. Secor*, 60 Wis. 310. These elements of an adverse possession in view, the building of a fence on such line, or the making of other improvements with relation to such line, may be evidence of such practical establishment of a boundary line between adjacent owners. *Warner v. Fountain*, 28 Wis. 405. There has not only been no agreement, express or implied, to make the old fence the true line, but such line has been disputed by the plaintiff and a former owner, and there has been no acquiescence in such boundary. Whenever the question has arisen between the plaintiff and defendant or their grantors as to the true line, the plaintiff and the former owner of the east half of said quarter have not only not acquiesced in the line where the old fence stood or consented to it, but have claimed and insisted that such was not the true line, and that the fence should be removed or rebuilt on the true line, to be fixed by a resurvey. In view of such facts, the title of the plaintiff as well as of the defendant must be referred to their deeds, and their possession restricted by them.

But aside from the want of the least evidence of an adverse possession, or of acquiescence in the line where the old fence stood, there is abundant evidence of *estoppel* of the plaintiff and the former owners from making the claim that the true line was where the old fence stood, which is inconsistent with the plaintiff's present claim that such is the true line. The plaintiff "should now be bound by the state of facts which he formerly induced the defendant to act upon." Bigelow on Frauds, 438; *Vilas v. Mason*, 25 Wis. 310; *Perry v. Williams*, 39 Wis. 339; *Zielke v. Morgan*, 50 Wis. 560. This is a very striking case of inconsistent claims, and of "blowing hot and cold." The plaintiff had the line surveyed, and induced and directed the defendant to build the fence upon it at considerable cost, insisting that such was the true line, and he would have the fence nowhere else, and then, in a short time thereafter, claiming in this action that he had no right to build the fence there, and that by doing so he was wrongfully dispossessing the plaintiff of this strip of land, which he owns, if at all, by virtue of a claim he has always disputed and repudiated.

The plaintiff does not claim title by deed or by the true line, but alone by adverse possession. According to the evidence, he has been holding such possession wrongfully, and by sufferance, and subordinate to the title of the defendant. It would seem that when the plaintiff had procured a resurvey to ascertain the true division line and the place where to rebuild the division fence between him and the defendant, and that when Pease, the former owner, procured a survey to ascertain the same facts as between him and Savage, the former owner of the defendant's half of the quarter, and that when such surveys were substantially alike as to the true line, and were proved by testimony not objected to by either party, *that* line ought to be accepted as the true line. But we will not so decide, for

the whole case seems to have rested upon the plaintiff's proof or want of proof of title by adverse possession, and if the plaintiff fails in such proof the verdict will stand as to the right of possession of the strip of land in controversy as between the parties. The plaintiff must stand or fall upon his own title, and, having failed to show any such adverse possession of the strip of land in controversy, the motion for a new trial on the ground that the verdict was contrary to the law and evidence was properly overruled.

The only other grounds of such motion, made the subject of argument in this court, are that the testimony as to how the old fence would agree with the fence on the division line of a corresponding quarter section north, owned by one Ward, was improperly rejected, and that certain instructions of the court, that there should be an "agreement" between the adjacent owners that a certain line should be the boundary on which to predicate adverse possession, were improper. The testimony rejected was certainly quite immaterial, for where Ward built his fence could not affect the question of adverse possession, or of the true division line between these parties. The only possible objection to the instructions is that the court did not say that such an agreement might be implied or inferred from circumstances and the intention of the parties. The court did not say that such an agreement must be an express one. But it is a sufficient answer to the objections of the appellant to the instructions given, and the exceptions to the court's refusal to give certain instructions, that the facts rendered them all immaterial. There was no evidence of any agreement, express or implied, and there was no holding in good faith, and no adverse possession, against which a mere consent of the plaintiff to have the fence built on another line could not prevail. The plaintiff was not injured by the instructions given, or by the refusal to give

those asked by the appellant, and would not have been injured if the court had instructed the jury to find for the defendant. ·

*By the Court.*— The judgment of the circuit court is affirmed.