SPENGLER, Appellant, vs. KNAUS and others, Respondents, and ZACHOW and wife, Appellants.

*October 11—November 8, 1927.*

*Adverse possession: How established: Interruption of possession: Mortgagee taking peaceable possession by tenant: Attornment of tenant to adverse claimant: Effect.*

1. The essential elements of adverse possession must be established in a clear and satisfactory manner by evidence, direct or circumstantial, of a positive, unequivocal character.    Such elements cannot be found from mere general statements of witnesses, not based on facts clearly warranting them, nor in the face of facts clearly established which are so inconsistent with adverse possession as to render it altogether improbable.    p. 102.

2. In an action to foreclose a mortgage in which a purchaser of the lands from the mortgagor intervened, one claiming adverse possession under color of title through a void tax deed is *held* not to have established adverse possession for ten years prior to the commencement of the action by the quantum of proof required, where a tenant of the intervenor mortgagee occupied the premises for part of such period; and the adverse holder could not, without notice to the mortgagee, rely on any arrangement with the occupant to attorn to him as landlord. p. 106.

3. Where one giving a second mortgage on premises abandoned them, the holder of such second mortgage had the right to take possession by placing a tenant thereon, since, if the mortgagee can take peaceable possession of the premises, he has a right to do so, and what he can do himself he may authorize another to do for him. p. 106.

4. In order to avail oneself of the ten years' statute of limitation under a written instrument, the use must be continuous, and any substantial interruption of the adverse user defeats previous prescription. p. 106.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Reversed, with directions.*

The plaintiff began an action to foreclose a mortgage. The defendant *Mary C. Behm* answered and alleged title in herself under a tax deed, and adverse possession as against the plaintiff for over ten years. One *W. C. Zachow* intervened, claiming fee title under deed from the original mortgagor, on the grounds that the tax deed was invalid, and denying adverse possession of the defendant *Behm.*

The case was tried before the circuit court without a jury. The circuit court found that for more than ten years immediately preceding the commencement of this action, the defendant *M. C. Behm,* as the purchaser, and one C. Serier before her, had been in the actual continued occupation and possession of said premises adverse to, and exclusive of, every other right, under claim of title founded upon said deed to the said C. Serier above described. The court further found that during the whole of said time since

said entry, the said premises and the whole thereof had been usually cultivated and improved, and had been protected by a substantial inclosure by the defendant *Behm*.

The judgment dismissed the complaint of the appellant and the cross-complaint of *Zachow,* and declared the defendant *M. C. Behm,* at the time of the commencement of the action, the owner of the premises sought to be foreclosed, in fee simple. The plaintiff in the action in the circuit court appealed.

For the appellants there were briefs by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein.*

For the respondent *Behm* the cause was submitted on the brief of *John B. Chase* of Oconto.

CROWNHART, J. This case turns on questions of fact. The appellant sought foreclosure of a mortgage more than twenty years old and more than fifteen years past due, upon which payments of interest had been made up until about five years prior to the commencement of the action. Respondent *Behm* claims title for more than ten years by adverse possession under color of title through a void tax deed.

"The essential elements of adverse possession cannot properly be found to exist except upon testimony of a positive and satisfactory character. That does not mean that such elements must all be established by direct evidence, but that they must be established in a clear and satisfactory manner by evidence, direct or circumstantial, of a positive, unequivocal character. *Meyer v. Hope,* 101 Wis. 123, 77 N. W. 720. It is not consistent with that to find such elements from mere general statements of witnesses, not based on facts clearly warranting them, nor in the face of facts clearly established which are so inconsistent with adverse possession as to render it altogether improbable." *Illinois Steel Co. v. Budzisz,* 115 Wis. 68, 84, 90 N. W. 1019.

The facts as presented are in substance as follows: One Knaus and wife had title to the premises in dispute. In May, 1904, they mortgaged the same to the appellant for

$1,000, note due in five years. In March, 1906, Knaus and wife conveyed to *Zachow,* subject to the appellant's mortgage, which he assumed. In May, 1908, *Zachow* conveyed to Marcks and received a mortgage back for $1,000, which mortgage he held up until the time of the trial. Marcks abandoned the place in 1909, and in April, 1918, gave *Zachow* a quitclaim deed to the premises. *Zachow* paid taxes on the place until 1916, except for the year 1909. In 1910 the property was sold for taxes of 1909 to Serier, who got a tax deed thereon in May, 1913.

Serier had received a deed to some lands owned by *Behm,* for the purposes of sale thereof for *Behm,* but no sale having been made, in November, 1915, he gave *Behm* a quitclaim deed of his tax title to the premises in question. In the spring of 1914 *Behm* claims to have taken possession of the premises by picking up some wood, building some fences, and pasturing cattle thereon. *Behm* claims to have remained in continuous, open, and notorious possession thereafter until the commencement of this action. He paid taxes on the premises from 1916 to 1924, inclusive. The appellant relies on a break in the adverse possession of *Behm,* if such she had, from May, 1915, to May, 1917, by reason of one Morien and wife living on said premises during that time as tenant of *Zachow.* In May, 1915, Morien was living on a place owned by *Zachow* which *Zachow* had sold, and *Zachow* demanded that Morien remove from the place. Morien had no place to go and *Zachow* told him he could move on to the premises in question. At that time *Zachow's* interest in the place was that of a second mortgagee. Up to that time he had not taken possession of the premises. Morien was to pay no rent, and paid no rent to *Zachow.* He had a cow and two sheep, which were allowed to run at large on the premises in question and on other lands. He did no farming on the premises, but worked around by the day wherever he could get work.

The determining fact in this case turns on the nature of Morien's possession. Was he a tenant under *Zachow,* or did he hold by permission of *Behm?* Up to the time Morien went on to the farm *Zachow* had never been in possession thereof. He testified that he told Morien that he could go on the premises, "keep up the fences and see that there was nothing taken off of there," etc. On cross-examination he testified:

"I told them [the Moriens] that they could go on this Knaus place. I don't remember particularly what else I told them. I told them they could move on there until I sold. At that time I thought I owned it. I got a deed, a quitclaim deed, on this same piece of William Marcks on this same place, afterwards. I didn't know that in 1915 my title had been cut off. I did not investigate to see. . . . I didn't do anything about it, when in 1917 this man Morien came to me and stated that *Behm* had chased him out. I let it go for nine years and paid no attention to it, and yet I owned the land. . . . At the time I told the Moriens to go on there I thought I had a deed. I know the difference between a mortgage and a deed. I don't know whether I had a mortgage or a deed. The title will show that. I didn't keep track of that. I thought I owned this land. I thought I had a right to recover title and that I had an interest in it. I never started any proceedings to recover my title."

On redirect examination *Zachow* testified:

"I knew that Marcks had left the land and abandoned it at the time I told the Moriens to go on there. After Marcks had left the land and abandoned it I took possession of it to hold my interest. That is why I sent the Moriens there to take charge of it."

Morien was produced as a witness by the appellant. He testified:

"As near as I know, *Mr. Zachow* told me to move over in the Knaus place. There wasn't much said as to when to move into this place on the Knaus farm. He said, just move

on there, as I did not know where to go. *Mr. Zachow* gave me permission to do it. I could not tell how long we lived there. I should judge about a couple of years. Prior to the spring that we moved out, Mr. Behm claimed he had a right to it. I don't remember just when it was, but one or two times he tried to impress it that that was his place and I had to go according to his orders strictly. Well, you know what a man will tell, when he is down and out, he will submit to the inevitable. I could say nothing, I was hand-tied. I was in a quandary as to who was the owner of it."

On cross-examination Morien testified:

"We got there somewhere around 1915. We had not been there but a short time when Mr. Behm told me that we could stay there as long as we wanted to, but he wanted me to understand that he owned the land and we were his tenants. . . . This man claims and this man claims, I did not know where I was at and I don't know today."

The evidence of the character of Morien's possession, on the part of the appellant, is quite satisfactory. It is clear that *Zachow* thought he had some kind of title, and his main idea was to get Morien off from his place where he then was. He gave him permission to go on to the Knaus place, without rent or without other conditions.

On the part of the respondent it is admitted that Morien came on to the place in May, 1915. H. H. Behm was the agent for his wife, the respondent here. He testified that Morien went on to the premises by his permission; that he personally told Morien to move into the house. He claimed the Moriens had to have help from the town, witness being chairman of the town. He let Morien on to the place to help him out and avoid town expense. But witness wrote Morien a letter shortly before the trial, in which he gave a different version of the transaction and one which substantially agrees with the testimony of Morien. There was some supporting testimony as to the contentions of both parties, which we deem unnecessary to set forth.

The evidence of *Behm's* adverse possession of the premises for Serier in 1914 is rather meager. It at best consisted of picking up some firewood, repairing some fencing, and pasturing some cattle on the premises. The house was not occupied by Serier or *Behm*.

The court, from the whole record, is of the opinion that *Behm's* adverse possession did not commence until about the time that Morien removed from the premises in 1917, at which time respondent *Behm* began payment of taxes and made substantial improvements in clearing the land, and actually raised some crops thereon. At most it did not commence until he acquired title by quitclaim deed in November, 1915. The respondent *Behm* therefore failed to establish adverse possession for ten years prior to the commencement of the action in September, 1925, by the quantum of proof required. The premises having been abandoned in 1909 by Marcks, *Zachow,* as mortgagee, had a right to take possession thereof by placing a tenant thereon, which the evidence fairly discloses he did. If the mortgagee can take peaceable possession of the premises he has a right so to do; and what he could do himself he may authorize another to do for him. *Hennesy v. Farrell,* 20 Wis. 42. In order to avail oneself of the ten years' statutes under a written instrument the use must be continuous, and any substantial interruption of adverse user defeats previous prescription. *Haag v. Delorme,* 30 Wis. 591; *Fairfield v. Barrette,* 73 Wis. 463, 41 N. W. 624. Morien having gone into peaceable possession under *Zachow, Behm* could not, without notice to *Zachow,* rely on any arrangement with Morien to attorn to *Behm* as his landlord. *Laffitte v. Superior,* 142 Wis. 73, 125 N. W. 105.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.