KNUTSON, Appellant, vs. MUNSON, Respondent.

*December 8, 1931—March 8, 1932.*

For the appellant there were briefs by *Thompson, Myers & Helm* of Racine, and oral argument by *Peter J. Myers.*

For the respondent there were briefs by *Beck, Smith & Heft* of Racine, and oral argument by *Lawrence H. Smith.*

The following opinion was filed January 12, 1932:

OWEN, J. The plaintiff has for many years owned a tract of land in Racine county, Wisconsin, bordering on

Wind Lake. The original location of this tract of land will appear by reference to the following plat:

Many years ago the waters of Wind Lake were lowered about two feet by artificial means. This increased the amount of the exposed shore-land, and it is land so exposed that is involved in this action. The land involved in this action is the shore-land lying east of the line running north and south from meander corner to meander corner, in front of the plat of land marked "J. J. Munson." This line is

referred to in the evidence as the eighth line, and the north meander corner marks the intersection of said eighth line with the section line. The deed through which plaintiff claims title described the property by metes and bounds and, as will, be seen, fixes the plaintiff's northwest corner at a point somewhat east of the eighth line. The plaintiff acquired title to this property October 14, 1902. Very soon after acquiring title she built a fence running from the northwest corner in a northerly direction as far as the section line. This fence took the general direction of the eighth line and followed the east side of the highway which runs in front of the property marked "J. J. Munson." There was a fence from the north meander corner running east to the lake. This furnished her a complete inclosure of this land, upon which she pastured her cattle under claim of ownership. Thereafter, the date not definitely appearing, this east-and-west fence on the section line was torn down, and shortly after the tearing down of that fence Mrs. Knutson built another fence running from the northeast corner of the Munson property in a northeasterly direction to the lake, the easterly portion of this fence being indicated on the plat and marked "old fence." The westerly end of the fence was torn down at the time the *locus in quo* was surveyed, for which reason it does not appear on the plat.

The evidence shows that there were two or three controversies between the plaintiff and the predecessors in title of J. J. Munson concerning the exact location of the north-and-south fence in front of the Munson property. It was moved once or twice to conform to lines established by surveys. One Cook acquired the title to the Munson property through an administrator's deed on the 28th day of April, 1908. At the time he acquired title, the fence running from the northeast corner of the Munson property to the lake was then built. There was also a north-and-south fence running from the northwest corner of the Knutson prop-

erty to the westerly end of that fence. While it appears that after Cook acquired title there was some controversy between him and the Knutsons with reference to the location of the north-and-south fence, and each employed a surveyor, and some change was made in the location of the fence, and an agreement or near agreement was arrived at between Cook and the plaintiff as to the proper location of that north-and-south fence, it does appear that the possession of the plaintiff to the shore was not disturbed further than that resulting from the moving of that fence a few feet one way or the other.

It will be noticed that the Knutson property, as described in her deed, extends north of the southern boundary of the Munson property, and it is understood that the dispute involved the land which Knutsons claimed north of the southern boundary of the Munson property, although that is not at all clear from the record. However, an examination of the plat indicates that the situation presents possibilities of controversy.

It conclusively appears from the evidence that the plaintiff claimed to own, and did occupy, fence in, use and cultivate, a tract of land commencing in close proximity to the Knutson northwest corner, running thence in a northerly direction to the fence running east and west from the northeast corner of the Munson land to the lake. So far as the last mentioned fence is concerned, it is clear that that was there when Cook acquired title April 28, 1908. It had been built some time before that by the Knutsons. It is also clear that that fence remained there until some time in 1928, when it was torn down by Mr. Munson. The exact date when it was torn down does not appear. However, there is a strong inference that the fence was constructed some time before April 8, 1908, and that it was not torn down until some time in the summer of 1928, and, if so, this fence inclosed the land in question for a period of more

than twenty years. Cook admits that when he acquired title to the land the north-and-south fence was there and that also remained during the same length of time, except as it might have been moved a few feet one way or the other to accommodate it to a line established by the surveyors. The only part of the land in controversy that could be affected by this change in the north-and-south fence would be the strip between where the fence was and the line to which it was moved. It may be that there is a strip in there of which the plaintiff did not have adverse possession for a period of full twenty years, but her possession of all the rest of the land would not be affected by that circumstance. It seems certain that, except as to the strip involved in this movement of the fence, she has been in open, notorious, adverse possession of all the rest of the land for a period of more than twenty years, and that her title thereto was perfected at the time Munson tore down these fences in 1928. All of the testimony goes to indicate that she was in possession of this land, that she pastured her cattle on it, that she attempted to cultivate the land in front of the Munson property, that she filled up holes on it, plowed it up, planted it to beans and corn, and set out trees thereon, all with the knowledge of those who then owned the Munson property that she was claiming title and which claim was acquiesced in, or at least not disputed, by any of the owners of the Munson property during the entire period.

The Munson property was first acquired by Munson and Kinney on November 10, 1910. Mr. Cook testified that the fence was there in front of their property at that time; that he knew Mrs. Knutson was using the shore-land for pasture; that he knew she was cultivating the property, and that no one made any objection to their cultivating it, or to pasturing their cattle down there, while he was owner of it, and he knew that the Knutsons had continued to occupy and pasture that lake front down to 1928. Kinney, who

had acquired title to the property with Munson in 1910, testified that he had been acquainted with the property probably ten years before he bought it; that the first time he became acquainted with the property there was a little wire fence down below the road on the property occupied by the Munson cottage, which fence extended to the north line of the section, and that the Knutsons used the land lying between the eighth line and the water's edge; that he asked permission of Mrs. Knutson to go over this land and get water, and that Mrs. Knutson gave him her permission to do so. He says he did this to avoid any legal controversy and he figured this was a much better way than to have any legal action in the matter. Mrs. Knutson told him that the lake shore was her property, and that was the reason that he explained to her that they would not molest her in any way, and all they wanted was permission to go through that fence. A gate was then put through that fence, upon which was placed a sign: "Private, keep out." The only witness who testified that that fence was not in front of the Munson property at the time Munson and Kinney bought it was Munson himself, the present owner of it. His testimony, however, conflicts with all the other testimony in the case, and he fails to show when that fence was built.

The great weight and fair preponderance of the evidence plainly shows that the plaintiff was in the adverse possession of a great portion of this land prior to the time the fence was torn down by Munson in 1928. The judgment should have gone in her favor quieting her title to that land. We leave the description of the land to the trial court.

*By the Court.*—Judgment reversed, and cause remanded with instructions to render judgment in favor of the plaintiff as indicated in the opinion.

A motion for a rehearing was denied, with $25 costs, on March 8, 1932.