BETTACK and wife, Plaintiffs, vs. CONACHEN, Defendant.
[Two appeals.]

*September 9—October 8, 1940.*

For the plaintiffs there was a brief by *Arthur H. Strochan* and *Rex M. Smith*, both of Antigo, and oral argument by *Mr. Strochan.*

*Thomas E. McDougal* of Antigo, for the defendant.

ROSENBERRY, C. J.   In their complaint the plaintiffs allege that they were the owners of a piece of land known as 611 South Superior street, which was 90x167 feet, and allege that ·the defendant had trespassed thereon to their damage.   In his answer the defendant set out the facts which indicate that the real dispute between the parties was that the plaintiffs were claiming title to a piece of land four feet two inches wide on the west and extending easterly one hundred and sixty-seven feet where it came to a point. So that the action became one to try the title to this wedge-shaped piece of land.   We are not advised how this transition was made, but as all parties agree that it was made, we shall treat the action as one to try title to land by adverse possession.

The situation is best understood by reference to the sketch reproduced herewith.

While this sketch is not entirely accurate, it is useful for illustrative purposes.   It appears without dispute that the defendant acquired title by deed dated September 23, 1903, duly recorded, September 25, 1903, to the premises lying just south of the Bettack premises, defendant's property as described in his deed also being ninety feet in width and one hundred and sixty-seven feet in depth from South Superior street.   There is no dispute but that an agreed point on the east line indicates the east end of the true boundary between the properties owned by plaintiffs and the defendant according to their respective deeds, the line being established by a joint survey made by the county and city surveyors. At the time the defendant acquired his property in 1903, he bought from one Charles Knapp.   At that time the premises to the north were owned by one James Drake.   In 1917, Drake made a verbal arrangement with Mr. Bettack for the purchase of the premises.   Bettack testified that he moved upon the premises in 1913 and lived thereon under a lease for three or four years.   The plaintiffs acquired title

SOUTH SUPERIOR ST.

to the premises by deed dated December 27, 1928. Plaintiffs now make no claim that the wedge-shaped strip of land already described was any part of the land which was conveyed to them by the deed from Drake. They therefore do not claim the disputed strip under color of title but rely solely upon adverse possession. While there is some conflict in the evidence as to whether there was a fence between

the lots running back from South Superior street, there is no dispute that no such fence has existed during the last twenty years. On the other hand, there was a fence on the line between the two properties on the east. The exact location of that fence is also a matter of dispute. While the plaintiffs did not have title to their lot by deed until 1928, the oral arrangement by which the Bettacks became the purchasers of the property made in 1917 or 1918, was sufficient to create continuity of the original adverse possession of the disputed strip if such there was. *Illinois Steel Co. v. Budzisz* (1900), 106 Wis. 499, 82 N. W. 534; 1 Am. Jur. p. 882, § 155, and cases cited.

These facts lead us to a consideration of the character of the possession of the grantor of the plaintiffs, Mr. Drake. Before we proceed with that, it will be helpful to lay down some legal principles. Where a person enters under a deed of title, his possession is construed to be coextensive with his deed. *Clarke v. Courtney* (1831), 5 Pet. 319, 8 L. Ed. 140; 1 Am. Jur. p. 909, § 207, Possession under color of title. While the statute, sec. 330.09, defines adverse possession by a person not claiming under a written instrument, it is affirmative and does not purport to enumerate all the conditions which constitute adverse possession. *Zellmer v. Martin* (1914), 157 Wis. 341, 147 N. W. 371.

It is established by a long line of cases that where one of two adjacent landowners extends his fence, through mere inadvertence or ignorance of the location of the true boundary line, so as to embrace within his inclosure lands belonging to his neighbor, with no intention of claiming such extended area, but with the intention of claiming adversely only to the true boundary line, wherever it may be, his possession of such extended area is not adverse or hostile to the true owner. It is sometimes stated, where the intention is not to claim to the visible boundary unless it is the true line, the possession is not adverse. *Hacker v. Horlemus*

(1887), 69 Wis. 280, 34 N. W. 125; *Ayers v. Reidel* (1893), 84 Wis. 276, 54 N. W. 588; *Fuller v. Worth* (1895), 91 Wis. 406, 64 N. W. 995; *Reilly v. Howe* (1898), 101 Wis. 108, 76 N. W. 1114. See note, Possession with intention to claim to true line only not adverse, 97 A. L. R. p. 21.

It is also well established that mere possession is not a sufficient basis for claim of title by adverse possession. *Fairfield v. Barrette* (1889), 73 Wis. 463, 41 N. W. 624; *Ayers v. Reidel, supra; Fuller v. North, supra.*

In later cases it is held, however, that where one takes actual possession such possession is not the less adverse because the person takes possession of the land innocently and through mistake. In other words, it is the visible and adverse possession, with an intention to possess the land occupied under a belief that it is the possessor's own, that constitutes its adverse character, and not the remote view or belief of the possessor. *Wollman v. Ruehle* (1899), 104 Wis. 603, 80 N. W. 919; *Bishop v. Bleyer* (1900), 105 Wis. 330, 81 N. W. 413; *Gilman v. Brown* (1902), 115 Wis. 1, 91 N. W. 227; *Dreger v. Budde* (1907), 133 Wis. 516, 113 N. W. 950; *Mielke v. Dodge* (1908), 135 Wis. 388, 115 N. W. 1099; *Ovig v. Morrison* (1910), 142 Wis. 243, 125 N. W. 449; *Progress Blue Ribbon Farms v. Harter* (1911), 147 Wis. 133, 132 N. W. 895; *Wilson v. Stork* (1920), 171 Wis. 561, 177 N. W. 878; *Knutson v. Munson* (1932), 207 Wis. 248, 240 N. W. 542; *Krembs v. Pagel* (1933), 210 Wis. 261, 246 N. W. 324.

In all of these cases there had been a fence marking the boundary line and the party claiming by adverse possession had used the premises up to the fence for the requisite twenty-year period.

Where one goes upon the land of another without color of title his rights will be confined to that portion of the

property of which he takes actual possession. *Watkins v. Holman* (1842), 16 Pet. 25, 10 L. Ed. 873.

Where the true owner is in actual possession of a part of the land claiming title to the whole he has the constructive possession of all the land not in the actual possession of the intruder. *Deputron v. Young* (1890), 134 U. S. 241, 10 Sup. Ct. 539, 33 L. Ed. 923; 1 Am. Jur. p. 909, § 206, cases cited note 17.

All reasonable presumptions are made in favor of the true owner in case of a claim by adverse possession, including the presumption that actual possession is subordinate to the right of the true owner. *Illinois Steel Co. v. Budzisz* (1900), 106 Wis. 499, 82 N. W. 534. In order to constitute adverse possession against the title of the true owner, an adverse claim must be sufficiently open and obvious, both as to the fact of possession and its real adverse character, to apprize the true owner if in charge of the property and in the exercise of reasonable diligence of the fact and of an intention to usurp the possession of that which in law is his own. *Kurz v. Miller* (1895), 89 Wis. 426, 62 N. W. 182.

We shall next consider the character of the possession of the plaintiffs as shown by the undisputed evidence. Mr. Drake testified that there was never any fence on the line between the two properties at the west end; that he at no time pointed out to the defendant any post at the southwest corner of what he claimed was the corner of the Bettack property. He said:

"I have always known where my corner was, and have never called Mr. Conachen's attention to where I claimed the post was. To my knowledge there was only about ten months in which there was any question about the location of the south line of the Bettack property. I never had a word with the man until this spring. So far as I know there has never been any dispute about this line. . . . I at no

time said anything to Mr. Conachen before this year about the location of that southwest corner of the Bettack land."

The evidence of Mr. Drake shows without dispute that whatever claim he made was based upon the claim that a line running easterly from the joint in the sidewalk was the true line. There is nothing to indicate that he ever intended to claim any part of the property covered by defendant's deed or exclude defendant therefrom. His claim related to the location of the line and not to any claim of adverse possession. Bettack testified that Drake told him where the boundary line was and that the southwest corner of his property was where the sidewalk joined and that the two trees between the Bettack and Conachen properties were on the property of Bettack. It is undisputed that Bettack in 1928 built a garage which invaded the disputed strip.

We have carefully read the testimony and so far as we are able to discover this is the only act which would indicate to a man in charge of the premises and in the exercise of reasonable diligence that the Bettacks intended to exclude others from any part of the disputed strip. The plaintiffs have at all times claimed under their deed. In their complaint they allege they were in possession of certain lands, describing them, and upon the trial Bettack testified that he had title to the lands described by virtue of a deed from Drake made in December, 1928, at which time the southern boundary was pointed out to him.

The plaintiffs at no time until about the commencement of the action objected to defendant's possession of the disputed strip. A tree blew down which stood in the disputed strip. Mr. Bettack cut it up for wood. The defendant says that he gave Bettack permission to cut it up. Bettack does not deny this. Neither party excluded the other from the disputed strip until the plaintiffs took exclusive possession of a part of it by the erection of their garage.

In denying defendant's motions after trial, the court made the following statement:

"The record may show the motions of the defendant at this time are denied with this explanation: That the special verdict submitted to the jury assumes the survey made and given in evidence is the correct line between the lots in question."

To this assumption apparently all parties agreed. While the allegation of the complaint was that the plaintiffs were the owners and in possession of the property described, the property described does not include the disputed strip. So far as we can discover from the record, the claim of title by adverse possession arose during or at the close of the trial. In order to establish his case Bettack testified to the contents of the deed by which he took title. The plaintiff also testified that the disputed strip was within the boundaries set out in his deed as pointed out to him by his grantor Drake. There is a vast deal of evidence both pro and con as to the location of the true line. It appears that after the defendant went into possession of his premises he built a sidewalk. The north end of this sidewalk is four feet two inches south of what the surveyors find to be the true line. He says that there was an understanding between him and Drake with respect to this. Drake denies this. The sidewalk also extended to the south of defendant's south line some three feet. Both Drake and Bettack in their testimony claim that the north end of the sidewalk marks the location of the true line between the properties of the plaintiffs and the defendant. Much of the evidence offered and received would be material upon the question of the location of the true line if it could not be located by survey. It was not material upon the issue of adverse possession. Without attempting in any way to amend the pleadings so as to describe the disputed strip the matter apparently was submitted to the jury and by special verdict the jury found—

"that the plaintiffs and their predecessors possessed and held the strip of land [description of the wedge-shaped piece] adversely to the defendant and his predecessors, for a period of twenty years prior to the time of the commencement of this action."

A careful search of the record fails to disclose any testimony that either Drake or the Bettacks ever made any claim other than that the true boundary line between the properties coincided with the north end of Conachen's sidewalk. The evidence discloses that the disputed strip was in the possession of both parties at times,—each of the parties mowed the lawn, Conachen dug a ditch along what he claimed to be the true line, which line the surveyors found to be the true line, he erected a fence upon what he claimed to be the true line, prevented the plaintiffs from plowing any part of what he claimed to be his premises. For practically two years, 1932 and 1933, while the Bettack premises were rented, the defendant had sole possession of the disputed strip except the part occupied by the garage. As a matter of fact there was very little, if any, friction between the parties with respect to this disputed strip until a comparatively recent time. While his testimony of course is not conclusive, Conachen testified that he did not object to the Bettacks' use of this land until recently because he did not know they were using it. He contends that the driveway which they used was not located originally where they now claim the location to be. Before one neighbor can acquire title by adverse possession of property belonging to another he must do something which clearly brings home to his neighbor the fact that he intends to claim the property against his neighbor and the world. If the Bettacks had built a fence on what they now claim to be the south line and had occupied the premises up to that fence, the erection of the fence and occupation of the premises would be a sufficient declaration of such intention, but a mere dispute as to

the location of the true boundary accompanied by acts which do not exclude the neighbor from possession do not give notice to the neighbor of any hostile intent or any purpose to exclude the neighbor from his customary possession of the premises. The plaintiffs are met at the threshold of their claim by the presumption that Conachen is in possession of the lands described in his deed. To overcome that presumption there must be something which shows they intended to exclude him therefrom. The only act of exclusion was the erection of the garage about 1928.

In this connection some comment should be made in regard to *Mielke v. Dodge* (1908), 135 Wis. 388, 394, 115 N. W. 1099. This was a case of adverse possession. In its opinion the court said:

"It is further insisted that the evidence of defendant to the effect that she never intended to claim more than up to the true line was sufficient to defeat her claim of title by adverse possession. But that contention is fully met by the decisions of this court." (Citing cases already referred to.)

In the *Mielke Case, supra,* the controversy was over the location of a line fence. The court found that for a period of twenty-nine years a substantial fence between the property of the plaintiff and defendant had existed; that said fence was always maintained on the line where originally placed for more than twenty years, and that defendant by herself and her immediate grantors had always maintained and claimed that such fence marked the true boundary or division between the land owned and occupied by the plaintiff and his grantors and the defendant and her grantors and persons in privity with her.

This case is in accordance with the modern trend of decisions, that the acts of the parties or the situation of the premises may be such as to make unnecessary proof of any secret or unexpressed intention by the one claiming adversely .

as to the character of his possession. In other words, actual visible hostile possession to a given line satisfies the statute even though the intention was to claim only to the true line. This court has adopted that doctrine, but it also has adopted the rule that the possession of one claiming adversely must be of such a character as to apprize the true owner that the possessor claims adversely and to the exclusion of the true owner. The cases when considered in connection with their facts are not inconsistent. As has already been said, plaintiffs never attempted to exclude the defendant from the disputed strip until they built their garage and the defendant did not attempt to exclude the plaintiffs. We do not undertake to say that there must be in every case a line fence, but there must be something which indicates what is known in the law as a hostile intent, that is, intent to claim title in hostility to the true owner. There must be something more than a dispute as to the location of the boundary with both parties in possession. The one claiming title must show that his possession was exclusive as that term is defined in the law. The case being barren of any evidence sustaining the jury's verdict, the judgment cannot stand.

The plaintiffs have appealed from an order made by the court extending the time within which a bill of exceptions might be settled. The judgment was entered on December 29, 1938, notice of entry being served on January 5, 1939. Notice of appeal was served and filed on the 20th day of March, 1939. After the entry of the judgment there was a substitution of attorneys. The attorneys for the defendant attempted to bring on the motion to have the time for settlement of bill of exceptions extended which was heard by agreement of the parties, on the 3d day of May, 1939.

In the consideration of this motion the trial court gave full weight to the rule that the time for settling a bill of exceptions cannot be extended except upon a showing of a

proper and sufficient cause therefor. Without setting out in detail all of the circumstances which were before the trial court, it is considered that there was no abuse of discretion or error in granting the motion of the defendant to extend the time for settling the bill of exceptions. Plaintiffs argue that because defendant failed to direct the attorney who tried the case to take an appeal, his showing was fatally defective. In view of the facts that the defendant was endeavoring to get the appeal taken and acted with reasonable diligence in that regard, the fact that by inadvertence of his present counsel the application was not made within the required time is, as the trial court held, excusable.

*By the Court.*—The judgment appealed from is reversed, and the order appealed from is affirmed, and the cause is remanded with directions to enter judgment in accordance with the prayer of the counterclaim.