CUSKEY and wife, Respondents, vs. McSHANE, Appellant.

*December 5, 1957—January 7, 1958.*

For the appellant there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *E. E. Omernik.*

For the respondents there was a brief by *Coe & Coe* of Rice Lake, and oral argument by *Edward J. Coe.*

BROWN, J.   Plaintiffs have record title to land identified herein as lot 5.   Defendant has record title to lot 4 which

adjoins lot 5 on the east. Both titles descend from one Swanson. Both parties occupy their respective lots. Defendant has excluded plaintiffs from the easterly 4.8 feet of lot 5 beginning, according to the complaint, on or about August 1, 1954, when defendant erected a fence along such 4.8-foot line. Defendant admits plaintiffs' record title to lot 5, but rests her defense and counterclaim to the east 4.8 feet of lot 5 on her alleged adverse possession of such land for more than twenty years preceding the commencement of this action.

The trial court found that the acts of occupation which defendant relies on were not done in a hostile manner nor under claim of right; that such occupation as defendant imposed was not open, obvious, evident, or notorious to the plaintiffs; that such acts of occupation were not continuous through the twenty-year period or exclusive as against the plaintiffs but were of an equivocal character and sporadic and affecting small and differing portions of the disputed strip until on or about August 1, 1955, when defendant placed a fence along the line marking the west boundary of such disputed strip. (The record places this date about August 1, 1954.)

Findings of fact by a trial court are not to be disturbed on appeal unless contrary to the great weight and clear preponderance of the evidence. *Swazee v. Lee* (1951), 259 Wis. 136, 47 N. W. (2d) 733.

We cannot find that these findings lack sufficient support in the evidence. Each party testified that he or she performed various acts of ownership on the disputed strip. Thus, in behalf of defendant, the evidence shows that she had a swing and hammock for a part of the time in trees standing on the disputed area. There was testimony that she cared for the strip by putting some fill upon it, by mowing the grass, and otherwise cleaned up the area at all times during the preceding twenty years when she considered it needed such cleaning up.

On the other hand, the plaintiffs testified that they cut the grass, trimmed the trees, and parked cars and equipment in such area at will. In connection with his filling-station business Mr. Cuskey fastened one end of an advertising banner to one of the trees now claimed by defendant. Defendant's son told him to take it down. He refused to do so and the banner remained there.

In *Bettack v. Conachen* (1940), 235 Wis. 559, 294 N. W. 57, we gave exhaustive consideration to the subject of the acquisition of title by adverse possession. Significant statements of principle from the opinion in that case are:

"Before one neighbor can acquire title by adverse possession of property belonging to another he must do something which clearly brings home to his neighbor the fact that he intends to claim the property against his neighbor and the world." (p. 569.)

". . . a mere dispute as to the location of the true boundary accompanied by acts which do not exclude the neighbor from possession do not give notice to the neighbor of any hostile intent or any purpose to exclude the neighbor from his customary possession of the premises. The plaintiffs are met at the threshold of their claim by the presumption that Conachen is in possession of the lands described in his deed. To overcome that presumption there must be something which shows they intended to exclude him therefrom." (pp. 569, 570.)

". . . actual visible hostile possession to a given line satisfies the statute even though the intention was to claim only to the true line. This court has adopted that doctrine, but it also has adopted the rule that *the possession of one claiming adversely must be of such a character as to apprise the true owner that the possessor claims adversely and to the exclusion of the true owner.*" (Emphasis supplied.) (p. 571.)

"Where the true owner is in actual possession of a part of the land claiming title to the whole, he has the constructive possession of all the land not in the actual possession of the intruder." (p. 566.)

"All reasonable presumptions are made in favor of the true owner in case of a claim by adverse possession, including the presumption that actual possession is subordinate to the right of the true owner. . . . In order to constitute adverse possession against the title of the true owner, an adverse claim must be sufficiently open and obvious, both as to the fact of possession and its real adverse character, to apprise the true owner if in charge of the property and in the exercise of reasonable diligence of the fact and of an intention to usurp the possession of that which in law is his own." (p. 566.)

The evidence amply supports the findings that the defendant's acts of ownership were neither continuous nor did they exclude plaintiffs from the use and possession of the area to which their deed gave them record title until, in 1954, defendant put up what may be regarded as a line fence 4.8 feet west of the true line of defendant's lot.

Defendant complains of the court's refusal to receive certain evidence concerning actions and conversation attending her purchase of lot 4 in 1929 from August Swanson, her uncle, now deceased, who then owned both lot 4 and lot 5. The trial court ruled the evidence was incompetent under the "dead man's statute." The acts and statements sought to be proved tended to show that the land defendant intended to buy extended 4.8 feet west of the true boundary between lots 5 and 4. Some of this evidence was not barred by the statute, sec. 325.16 (transactions with deceased persons), and its rejection was error, but the refusal to admit it was not prejudicial. Defendant does not contend anything west of the line of lot 4 was conveyed to her; she says she has acquired the additional land by adverse possession. The rejected evidence does not tend to support that claim. It has nothing to do with proof of her acts of occupation upon which, alone, her claim of ownership depends.

Defendant contends that the behavior and remarks of the trial court demonstrate bias requiring a new trial, and she

relies on *Reuling v. Chicago, St. P., M. & O. R. Co.* (1950), 257 Wis. 485, 44 N. W. (2d) 253. That action was a trial to a jury. What was said there on the subject does not apply to a trial to the court. The trial seems to us, from the record, to be a fair one.

The trier of the fact is the judge of the credibility and the weight to be given to the evidence. It was competent for the trial court to find that the evidence of defendant's hostile and exclusive possession of the disputed area failed to meet the burden of proof required to establish title in her by adverse possession.

*By the Court.*—Judgment affirmed.