JEZEINSKI, Appellant, v. LIPINSKI and wife, Respondents.

*February 6—March 7, 1961.*

For the appellant there was a brief by *Atwell & Atwell* of Stevens Point, and oral argument by *W. E. Atwell, Jr.*

For the respondents there was a brief and oral argument by *James H. Van Wagenen* of Stevens Point.

BROWN, J.    The parcels in question are located in a tier of lots whose south boundaries are the north edge of Fifth avenue in the city of Stevens Point. The avenue runs east and west. Each lot has a 50-foot street frontage. The north-south boundary lines are perpendicular to Fifth avenue. Plaintiff owns lot 11. The next lot to the west is lot 10, which plaintiff also owns. Lot 9 lies next to the west, having a north-south line common with lot 10. Defendants own lot 9, and the dispute is over the true location of the common boundary.

Plaintiff's garage is on the north part of lot 10 and in 1948 she built a driveway from her garage to the avenue. The driveway consisted of two strips or ribbons of concrete. These are not straight but curve somewhat to the west. Defendants are building a garage on the north edge of lot 9 and have set out stakes designating their east property line. Plaintiff alleges that the line so designated is approximately 3.5 feet to the east of the true line and by that much encroaches on plaintiff's lot 10. If the line so staked out is the correct line, as defendants assert, part of plaintiff's driveway is an encroachment on defendants' lot 9.

The plaintiff has the burden of proof to establish the line which plaintiff alleges is the true one. To substantiate her claim she alleges that the property was surveyed and

the boundary line established some forty years ago and the extremities of the north-south line were marked by stone markers which have since disappeared. However, she contends that a fence was built on the line which plaintiff claims is the true one and that the parties acquiesced in that line as early as 1928 and have done so ever since, whereby such line, conforming to plaintiff's claim, has become the true boundary. Further, if it should appear that defendants did not agree to that line and acquiesce in such boundary, plaintiff has exercised open and notorious and exclusive possession of all the land east of such line for forty years and has acquired title to the disputed strip by adverse possession.

Trial was had to the court which filed a written decision and the court made findings of fact and conclusions of law upholding all the contentions of the defendants and denying those of the plaintiff. The findings must be affirmed unless they are contrary to the great weight and clear preponderance of the evidence. *Webster v. Dane Corp.* (1960), 9 Wis. (2d) 437, 439, 101 N. W. (2d) 616; *Cuskey v. McShane* (1958), 2 Wis. (2d) 607, 608, 87 N. W. (2d) 497. And the trier of the fact is the judge of the credibility and the weight to be given to the evidence. *Cuskey v. McShane, supra,* at page 611.

The evidence concerning the location of the line established by the survey of forty years ago is conflicting. The trial court determined that the weight and preponderance of the evidence favored defendants' contentions, in which we concur. The parties do agree that some forty years ago there was a survey which located their common boundary and a fence was built upon it. The trouble now is that the fence is gone and the parties do not agree where it used to stand. Plaintiff remembers the fence as being built on the line which plaintiff claims, and defendants remember it 3.5 feet farther east. Defendant August Lipinski helped build the fence and the trial court mentions the "considerable weight" to be given Lipinski's testimony of its location. The

defendants' parents acquired lot 9 in 1927 and the plaintiff testifies that in 1928 those parents and the plaintiff's predecessors in title joined in planting a maple tree at the south end of the lotline to mark the line. Plaintiff also testified that there was a stone marker on the line at the foot of the tree, which marker has since been covered over. Defendants say that in 1927, when the Lipinski parents acquired their lot, the tree was already there and was growing on lot 9 and the fence referred to as the line fence and then existing did not run to the tree but ran some three feet to the east of it. There was testimony on each side to substantiate each parties' exercise of ownership of the land beyond the tree by caring for the lawn in that area. During the progress of the trial, plaintiff demanded that the ground be dug up around the foot of the tree whereby, she said, that the stone marker would be discovered ascertaining the true line. In the presence of the court the digging was done but it revealed no indication that there was or had been any stone marker in this area.

The court put great reliance on the testimony of a surveyor named Lampert who testified for the defendants. In December, 1958, Lampert made a survey at the request of defendants to determine the east boundary of defendants' lot 9. Lampert's problem was to retrace the original lines of the survey of the plat in which these lots are situated. He started west of the plat from established points on the United States government "40" line, and by following accepted surveying methods he reached a ·point which he determined to be the southwest corner of lot 9. The accuracy of his process was confirmed by survey monuments found in place as he proceeded. With a 50-foot street frontage for lot 9, the southeast corner of lot 9—which is also the southwest corner of lot 10—should be found 50 feet east of lot 9's southwest corner. Lampert measured that distance and there he found a cross in the concrete paving of plaintiff's drive-

way .15 feet from where Lampert's measurements showed the true corner to be. Lampert then ran his line north from the corner so established to locate the common boundary between lots 9 and 10. It is this line which defendants claim is the correct one and is approximately 3.5 feet east of the line for which plaintiff contends.

The accuracy of Lampert's calculations were strongly confirmed by his further measurements. Bearing in mind that plaintiff owns lots 10 and 11, each of which is platted for a 50-foot frontage, Lampert started at the point where he had located the parties' common corner, the southeast corner of lot 9 and the southwest corner of lot 10. Thence he measured 100 feet east along the south line of lots 10 and 11 and this brought him exactly to an arbor vitae hedge which apparently marked the east boundary of lot 11. Plaintiff testified that indeed the east line of her property is right at that hedge. Thereby plaintiff is claiming a frontage of 103.5 feet instead of 100 feet which the plat gives her.

The judgment determines that the disputed boundary is the line established by Lampert's survey and that where plaintiff's driveway extends to the west of said line the driveway constitutes a trespass which plaintiff is ordered to remove. The judgment quiets title in the respective parties in respect to the line so established and dismisses plaintiff's complaint upon the merits.

We have no difficulty in determining that the findings of fact by the trial court are not against the great weight and clear preponderance of the evidence and we affirm the judgment.

*By the Court.*—Judgment affirmed.