Arline C. PIERZ, a/k/a Arlene C. Pierz, Plaintiff-Appellant, v. GORSKI, and another, Defendants-Respondents.

Court of Appeals

*No. 77–662. Argued December 7, 1978.—Decided February 8, 1979.*
(Also reported in 276 N.W.2d 352.)

132

For the plaintiff-appellant there were briefs by *Cameron, Shervey, Thrasher & Doyle, Ltd.* of Rice Lake, with *Howard E. Hanson* of counsel, and oral argument by *Joe Thrasher.*

For the defendants-respondents there was a brief and oral argument by *Thomas M. Anich* of *Anich & Peterson Law Offices* of Ashland.

Before Dean, P.J., Donlin, J., and Foley, J.

DEAN, P.J.   Arline Pierz appeals from a judgment, pursuant to a jury verdict, awarding Raymond and Lillian Gorski portions of Pierz's property by adverse possession. The parties own four parcels of land, having as their common point the center of Section 36, Township 42 North, Range 9 West, in Sawyer County. Pierz owns the land to the northwest, northeast, and southeast of the center point; the Gorskis own the land to the southwest. The disputed area was divided into three parcels at trial. Parcel "A" consists of approximately the southern 200 feet of Pierz's Northwest Forty, running 1,345 feet west from the center point.[1] Parcel "B" is

---

[1] We have rounded off the dimensions for clarity.

approximately 70 x 140 feet located on the quarter lines on Pierz's Northeast Forty. Parcel "C" is approximately 68 x 180 feet located on the quarter lines on Pierz's Southeast Forty.[2] The photographic exhibits and testimony disclose that the property in question is mostly woodland. The trial court described the property as "wild land."

In 1949, the Gorskis began improvements on their property which encroached on Pierz's property to the north and east. They built a house which is substantially located on parcel "A". Rocks were removed from the area around the house, and piled on parcel "C". The Gorskis planted trees in that area "that you shouldn't [sic] see this rock pile." They put in and maintained a lawn near the house and, in 1950 or 1951, drilled a well and installed a septic tank approximately 25 feet north of their home, with a drain field north of the septic tank in parcel "A". In 1955 they built a garage, and in 1956 erected a shed west of their house on parcel "A". They planted a 25 x 100 foot vegetable garden on parcel "B" and, construing the evidence in a light most favorable to the Gorskis, continued to use that garden until the trial in 1977.[3]

In 1949 and 1950, Mr. Gorski cut one or two truckloads of pulp from parcel "A". The Gorskis also took

---

[2] The verdict divided the land into separate parcels based solely on the legal description of land. Except where sec. 893.07(4), Stats., applies, the finder of fact should be offered an opportunity to find that portions of the land have been adversely possessed rather than an all-or-nothing choice. See sec. 893.08, Stats. It is the burden of the party claiming adverse possession to clearly define the area in which specific activities or improvements occurred.

[3] The testimony appears to indicate that the garden runs 100 feet west to east in parcel "B". Since parcel "B" is not 100 feet wide west to east, and Mr. Gorski testified that he cleared up to the east fence for the garden, it appears that approximately 25 feet of the garden is located in parcel "A".

windfalls and trees chewed down by beaver as firewood. A "logging road" was used to get to the "swamp" or "channel" north of their house. This "road" was not sufficient for travel by an "ordinary vehicle", but could be used by a jeep or tractor. Although brush was cut in this area, uncontradicted testimony of a forest consultant indicated that trees one inch in diameter were left standing "very close together" in the path. He further testified that he found no observable cuttings in the area and no stumps. He could tell from the standing trees that some cutting had occurred about twenty years earlier.

The Gorskis planted various species of trees "all over" the area. The forest consultant testified balsam and white pine trees grew along a power line,[4] but that he observed no "other improvements" to the forest. The surveyor also found no visible improvements to the area away from the buildings. The forest was chiefly overmature aspen. Gorski also planted clover under the power line for deer and partridge.

Gorski sprayed the entire area for poison ivy and army worms. A worm bed was put in north of the house in parcel "A". Since 1967, they and their neighbors have snowmobiled throughout the area.

In 1976 Gorski fenced the area in question and Pierz sued to remove the fence.[5] At trial, Pierz conceded adverse possession of the area around the house, outbuildings and yard. The jury found adverse possession of parcels "A", "B", and "C". The parties stipulated that

---

[4] The power line was installed in 1950 or 1951 along the road near the southern edge of Pierz's Northwest Forty. Mr. Gorski cleared the area under the line (approximately 30 feet wide). Trees were then planted under the line. The easement for the power line was granted by Gorski's predecessor in title in 1949. Gorski makes no claim of having gained any land because of this activity; "How can I, it ain't mine. I just did it for everybody."

[5] Pierz also sought damages, but that claim was not pursued at trial.

the easternmost boundary line would be extended southward to divide the parties' property south of parcel "C". The judgment awarded the Gorskis this parcel, "D", as well as parcels "A", "B", and "C", and costs and disbursements. Pierz appeals from the whole of this judgment.

The sole issue raised on appeal is whether sufficient evidence was presented to support a finding of adverse possession. The question on appeal is whether, resolving conflicts in the evidence to favor the verdict, the findings are contrary to the clear preponderance of the evidence. *Meyer v. Hope,* 101 Wis. 123, 77 N.W. 720 (1898). We will affirm the findings unless a finder of fact, properly applying the law, could not have reasonably concluded that the adverse possessor met his burden of proof. The finder of fact must strictly construe the evidence against the adverse possessor and apply all reasonable presumptions in favor of the true owner. *Bettack v. Conachen,* 235 Wis. 559, 564, 294 N.W. 57 (1940); *Lindokken v. Paulson,* 224 Wis. 470, 475, 272 N.W. 483 (1937). Resolving conflicts in the evidence to favor the verdict, we find the evidence insufficient as a matter of law.

The Gorskis' claim of title is not founded upon a written instrument, judgment or decree. As such, only the premises actually occupied may be adversely possessed, and the land is adversely possessed only if it has been "protected by a substantial inclosure," or "usually cultivated or improved" for twenty years. Secs. 893.05, 893.08, 893.09, Stats.

Section 893.09, Stats., which requires inclosure, cultivation or improvement of land to constitute adverse possession, does not purport to enumerate all of the conditions which constitute adverse possession. *Bettack v.*

*Conachen,* 235 Wis. 559, 564, 294 N.W. 57 (1940). To constitute adverse possession, the use of the land must be open, notorious, visible, exclusive, hostile and continuous, such as would apprise a reasonably diligent landowner and the public that the possessor claims the land as his own. *Burkhardt v. Smith,* 17 Wis.2d 132, 115 N.W.2d 540 (1962); *Seybold v. Burke,* 14 Wis.2d 397, 111 N.W.2d 143 (1961); *Cuskey v. McShane,* 2 Wis.2d 607, 87 N.W.2d 497 (1958); *Bettack, supra.*

Citing *Burkhardt,* the Gorskis argue that the land was "usually improved." While the court in *Burkhardt* defined "usually improved" as "ordinary use to which the land is capable and such as an owner would make of it," such use must also be sufficiently visible to give notice of exclusion to the true owner. 115 N.W.2d at 544. Improvements sufficient to apprise the true owners of adverse possession of wild lands must substantially change the character of the land. See 2 C.J.S. *Adverse Possession* Sec. 44 (1972). Where the land remains "wild" after the improvements are completed, no owner should be held to notice of the improvements. Acts which are consistent with sporadic trespass are insufficient to apprise a reasonably diligent owner of any adverse claim. *Austin v. Holt,* 32 Wis. 478 (1873).

In *Burkhardt,* the adverse possessors built a cottage, put in a septic tank, cut out and burned the dead trees and brush, and dug out and burned the stumps. They spaded the entire area and planted bluegrass. 115 N.W.2d at 542. This activity, the court held, "planted the flag of hostility." 115 N.W.2d 543. While not "every square foot" of the land was used, it is clear that the property as a whole was visibly changed by the adverse possessor from wild lands to a house and yard.

The land in *Burkhardt* was substantially similar to the yard area in this case which was concededly adversely

possessed. The Gorskis' yard area was visibly improved from "wild land" to a lawn. Their garden area was also improved, being both within the curtilage of the house and "usually cultivated."

The remainder of the property, however, was not sufficiently improved to allow adverse possession. The wooded area claimed by the Gorskis extends over 1,000 feet from their yard, and includes portions of three quarter-sections. Improvements in the area of the house and yard are insufficient to "plant the flag of hostility" over the remaining land. To allow adverse possession of the area near the house to extend to the distant corners of the forty would violate the requirement of sec. 893.08, Stats., "the premises so actually occupied, and no other, shall be deemed to be held adversely."

The Gorskis argue that the acts performed in the outer area, considered in relation to each other and to the house, are sufficient to constitute adverse possession of the entire tract. None of the acts described, however, significantly altered the character of the land in a manner which would give a reasonably diligent landowner notice of adverse possession. The worm bed, spraying for poison ivy and army worms, and planting of clover and trees (some from seed) are not visible in a forest. The cutting of windfalls and trees chewed down by beaver was neither visible nor sufficiently adverse. The cutting of one or two truckloads of pulp was not continuous. See 2 C.J.S. *Adverse Possession* Sec. 41 (1972). The "logging road" was not visible to a trained forester, and was, like the power line right-of-way, at best consistent with an easement rather than adverse possession. See *Hemmis v. Consolidated W. P. & P. Co.*, 173 Wis. 518, 181 N.W. 743 (1921). The rock pile was intentionally concealed, and would not have been sufficiently hostile if it had been open and notorious. These acts, considered in

relationship to each other and to the house, and considering the nature and size of the land in question, were not sufficient to apprise the true owner of an adverse claim.

The activities described were consistent with sporadic, trivial and frequently benign trespass. To allow adverse possession based upon such acts would encourage landowners to fence and post their wild land to prevent usurpation by their neighbors. Public policy favors open use of wild lands by the public. The law relating to adverse possession of wild lands ought not force landowners to avoid the risk of losing their land by denying their neighbors the use and enjoyment of the forest.

The judgment is reversed except insofar as it awards the Gorskis the house, garage, shed, outbuildings, yard with septic tank, and garden. It appears from the record before us that the "Johnson line" is the appropriate northern boundary of the adversely possessed land. The appropriate eastern boundary is the center line of the section, except for that portion of the garden which is located east of the center line. The western boundary was not clearly described in the record, but appears to run north from the "old town road," approximately 300 feet northwest of the point where the east fence meets the road. On remand, the trial court will determine the appropriate legal description of this area. The court will also reconsider the imposition of costs and disbursements.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.