COURT OF APPEALS
DECISION
DATED AND FILED

December 22, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1200**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV55

IN COURT OF APPEALS
DISTRICT IV

---

DAVID STAHLNECKER AND ROBIN FOX,

    PLAINTIFFS-RESPONDENTS,

 V.

JOHN VIETH AND LILA VIETH,

    DEFENDANTS-APPELLANTS.

---

       APPEAL from a judgment of the circuit court for Lafayette County: DUANE M. JORGENSON, Judge. *Affirmed*.

       Before Fitzpatrick, Graham, and Nashold, JJ.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   John and Lila Vieth appeal a judgment, entered following a bench trial, which awarded Robin Fox and David Stahlnecker title by adverse possession to a strip of land that falls on the boundary of their adjoining parcels and within the legal description of the Vieths' deed.  The Vieths argue that the circuit court erred by not granting default judgment in their favor on their counterclaim for trespass.   They also argue that the admissible evidence is insufficient to establish adverse possession, and that WIS. STAT. § 706.09 (2019-20),[1] referred to by the Vieths as the "bona fide purchaser defense," is a viable defense to the adverse possession claim.  We reject the Vieths' arguments and affirm the judgment.[2]

## BACKGROUND

¶2     This case concerns two adjoining parcels on a residential street in the City of Darlington.  One of the parcels has been owned by Fox and Stahlnecker for many years, and the second was purchased by the Vieths in 2018.  The parties dispute the ownership of a strip of land along their shared boundary line that varies in width from six to twelve feet along the shared boundary of the parcels.

---

[1]  All references to the Wisconsin Statutes are to the 2019-20 version.

[2]  During the circuit court proceedings, Fox and Stahlnecker claimed and the circuit court determined that, in addition to acquiring title to the strip of land by adverse possession, Fox and Stahlnecker also acquired title through the doctrine of acquiescence.  As this court recognized in *Peter H. & Barbara J. Steuck Living Trust v. Easley*, 2010 WI App 74, ¶34, 325 Wis. 2d 455, 785 N.W.2d 631, "it is not clear whether the doctrine of acquiescence remains a distinct means of proving adverse possession when, as here, there is no issue concerning the twenty-year time period [for adverse possession claims not founded on a written instrument]."  Because Fox and Stahlnecker's adverse possession based claim is dispositive, we need not consider the parties' arguments or the circuit court's determinations about acquiescence.  *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (stating that an appellate court need not address additional grounds to sustain a circuit court's order when one ground is dispositive).

2

Throughout this opinion, we refer to the parcel owned by Fox and Stahlnecker as the "Fox parcel," the parcel owned by the Vieths as the "Vieth parcel," and the strip of property in dispute as the "disputed strip."

¶3 The parties agree that the disputed strip is included in the legal description of the Vieths' parcel. However, Fox and Stahlnecker claim to have acquired title to the disputed strip by adversely possessing it for more than twenty years before the Vieths purchased their parcel.

¶4 After this dispute surfaced, Fox and Stahlnecker brought this action to quiet title in the circuit court, seeking a judgment under WIS. STAT. § 841.01 declaring that they own the disputed strip. In their answer, the Vieths denied that Fox and Stahlnecker's activities in the disputed strip amounted to adverse possession, and they argued that their purchase of the Vieth parcel extinguished any adverse possession claim. Additionally, the Vieths filed a counterclaim for trespass based on two instances in which Fox and Stahlnecker allegedly entered the disputed strip after the Vieths purchased their parcel. As discussed at greater length below, Fox and Stahlnecker filed their reply to the counterclaim four days late, the Vieths moved to strike the reply and sought default judgment on their counterclaim, and the circuit court denied the Vieths' motions, accepting the tardy reply.

¶5 Following discovery, the case proceeded to a two-day bench trial. Generally speaking, Fox and Stahlnecker introduced their own testimony and the testimony of others who had lived in the neighborhood regarding the historical use of the disputed strip. The Vieths introduced surveys placing the disputed strip in the Vieth parcel, the testimony of the surveyor, and their own testimony regarding their actions and observations since 2018. The following summary of facts is

derived from the circuit court's findings and is supplemented by the testimony and exhibits presented at trial. These facts have not been meaningfully disputed at trial or on appeal, except as noted below.

¶6    The Fox and Vieth parcels sit side by side in a residential subdivision. The lot sizes on their block are small, with the houses situated closely together. The Vieth parcel is to the east, and its entire western boundary abuts the eastern boundary of the Fox parcel.

¶7    The disputed strip runs the full length of the shared boundary between the parcels. Its western edge is marked by a concrete porch leading out of Fox and Stahlnecker's house. Its eastern edge is marked by the backside of a retaining wall. The retaining wall is itself indisputably situated on the Vieth parcel, and it is currently comprised of concrete blocks. The retaining wall was previously comprised of railroad ties, and it was rebuilt in or around 2004 by the Vieths' immediate predecessor in interest, Geraldine Bloyer and her son-in-law, David Chellevold. As a result of the topography created by the retaining wall, the northern portion of the disputed strip is, and has been, elevated several feet above the remainder of the Vieth parcel, and on roughly the same plane as the Fox parcel.

¶8    From at least 1983 up through 2018, the northern portion of the disputed strip consisted of grass, bushes, perennials, and several cedar trees, and the southern portion consisted of a dense row of twenty-five fully grown cedar trees, smaller bushes, and perennials. A neighbor testified that the cedar trees may have been on the disputed strip since the 1960s. The trees, bushes, and perennials blocked access from the Vieth parcel to the disputed strip.

¶9      Between 1983 and 1993, the Fox parcel was owned by the Black family, who lived there with their son, Scott.  Scott Black testified that he regularly played in the disputed strip, and that he would run through the row of cedar trees.  He and his family performed lawn care and maintenance on the Fox parcel, "all the way to [the retaining] wall."  These activities included mowing the lawn, raking, and trimming trees.  The Blacks continued to maintain the disputed strip through the duration of their ownership of the Fox parcel, until they sold it to Fox.  The Vieths' predecessors in interest never challenged the Blacks' maintenance activities in the disputed strip.

¶10     Fox purchased the parcel in 1993.  She married Stahlnecker in 1999 and, upon their marriage, Stahlnecker moved into the residence on the parcel.  It is undisputed that, in 2008, Fox signed a quitclaim deed transferring ownership of the parcel to herself and Stahlnecker.  Fox and Stahlnecker continued to live in the residence on the Fox parcel until 2015, at which time they purchased another residence and began renting the Fox parcel to tenants.

¶11     From 1993 through 2015, Fox and Stahlnecker occupied the disputed strip as owners of a residential parcel would, as a part of their backyard.  During the summer months, Fox regularly placed a downspout in the disputed strip.  She planted and maintained tulips, lilies, and other perennials in the disputed strip, pinching off old buds and dividing the tulip bulbs as needed.  She watered the plants, pulled weeds, and used a weed eater in the disputed strip.  Beginning in 1999, Stahlnecker maintained the disputed strip by trimming the cedar trees, raking leaves underneath the trees, cleaning up the area around the trees, mowing the grass, and performing general yard maintenance.  After the Vieths' immediate predecessor (Bloyer, with the assistance Chellevold) rebuilt the retaining wall, Fox planted bridal wreath and firebush atop the wall in the disputed

5

strip.  A neighbor testified that he regularly saw Fox and Stahlnecker maintaining the disputed strip.

¶12    There was no evidence presented at trial that the Vieths' predecessors challenged Fox and Stahlnecker's use of the disputed strip.  Linda Judkins, a tenant of one such predecessor, believed that the Vieth parcel extended no farther west than the retaining wall, and that it did not encompass the disputed strip.  Neither Judkins nor her child maintained or even accessed the disputed strip during their three-year tenancy at the property.  Likewise, when Chellevold rebuilt the retaining wall, he asked Fox for permission, as doing so would require him to place the top block of the wall further west than the retaining wall had been, into the disputed strip.

¶13    Fox and Stahlnecker hired Lawrence Schmit to survey the Fox parcel in 2010.  At trial, Schmit testified that surveying in that particular area of Darlington is fraught with difficulties.  According to the survey Schmit produced in 2010, the disputed strip was part of the Vieth parcel.  Initially, Schmit staked out a boundary line that cut through the middle of Fox and Stahlnecker's concrete porch and through their picture window.  Fox told Schmit that the boundary was incorrect and Schmit adjusted it, placing the boundary along the edge of the porch rather than through the middle of the porch.  Fox continued to believe that the survey incorrectly depicted the boundary line.  However, she did not hire another surveyor, nor did Fox or Stahlnecker take any legal action at that time to confirm their ownership of the disputed strip.

¶14    Fox and Stahlnecker purchased their other residence in 2015.  Thereafter, they began renting the Fox parcel to tenants.  As discussed in greater detail below, the parties dispute the extent to which the tenants continued to

maintain the disputed strip in Fox and Stahlnecker's stead. Although the circuit court found that Fox and Stahlnecker's open, hostile, exclusive, continuous, and notorious use of the disputed strip continued until at least 2018, the circuit court did not make any additional findings about whether the tenants continued to maintain the disputed strip after Fox and Stahlnecker moved out of that residence in 2015.

¶15 In 2018, the Vieths purchased the Vieth parcel from Geraldine Bloyer's estate. John Vieth testified that, prior to purchasing the Vieth parcel, he and Lila Vieth were eager to determine its boundaries because they were interested in improving the landscaping. As discussed more fully below, the Vieths looked at publicly available documents and visited the property on several occasions. At trial the Vieths both testified that, at the time they decided to purchase the parcel, they believed it included the disputed strip.

¶16 After purchasing the parcel, the Vieths made changes to the landscaping of the property. John Vieth testified that he spoke with his neighbors, including Fox, to provide them with notice of his plan to remove the cedar trees in the disputed strip. Vieth and Fox both testified to a conversation in which Vieth either told Fox about his plan to remove the trees, or asked Fox for her permission to remove them. Fox testified that she gave Vieth permission to remove the trees on the condition that he notify her when the removal would occur so she could be present when others were on her property. Vieth testified that he did not ask Fox for permission, and that, during the conversation, Fox acknowledged that the trees and bushes on the disputed strip belonged to the Vieths.

¶17 Not long after that conversation, John Vieth removed the cedar trees and other plantings in the disputed strip without notifying Fox. A dispute then

ensued over who held title to the disputed strip. In 2020, the Vieths hired Schmit to survey their parcel. Consistent with his survey of the Fox parcel from 2010, Schmit's 2020 survey again placed the disputed strip in the Vieth parcel. Thereafter, the Vieths placed no trespassing signs in the disputed strip and sought a permit to build a privacy fence. Those actions prompted Fox and Stahlnecker to file this lawsuit.

¶18 Following the close of the trial testimony, the circuit court issued an oral ruling, which it later supplemented through a written order. The court determined that Fox and Stahlnecker proved that they owned the disputed strip through adverse possession, acquiescence, or both. According to the court, their adverse possession claim ripened no later than 2013—that is 20 years after Fox purchased the parcel.

¶19 More specifically, the circuit court determined that Fox (and later Stahlnecker) had occupied the disputed strip in an open, notorious, hostile, exclusive, and continuous manner from 1993 until at least as late as 2018. Among other things, the court found that Fox and Stahlnecker had cultivated and improved the disputed strip by caring for the grass, bushes, perennials, and cedar trees that were on it when Fox purchased the parcel, and by planting other flowers, bushes, and perennials on the disputed strip. It found that Fox had always used the disputed strip as her own, and that she and Stahlnecker used it the way an ordinary owner of such property would as though "it was a part of [their] backyard." The court determined that these activities were sufficient to apprise a reasonably diligent landowner of the adverse possession, and further determined that "it was understood by all of [Fox's] neighbors that the land constituting the disputed strip was her land." Among other things, the court found it significant that Chellevold "sought and received permission from [Fox and Stahlnecker] to replace the

[retaining] wall" on the Vieth property. The court found that the Vieths' predecessors in interest knew that Fox and Stahlnecker claimed the disputed strip as their own and acquiesced to their possession and use of the disputed strip.

¶20 Additionally, the circuit court rejected the Vieths' bona fide purchaser defense founded on WIS. STAT. § 706.09. In the court's view, § 706.09 could not function as a defense to adverse possession claims and, even if it could, § 706.09 was not a defense in this case because the Vieths had affirmative notice of the adverse claim.

¶21 Accordingly, the circuit court entered a judgment declaring Fox and Stahlnecker to be the exclusive owners of the disputed strip, and it dismissed the Vieths' trespass counterclaim with prejudice. The Vieths appeal.

## DISCUSSION

¶22 On appeal, the Vieths contend that the circuit court erred: (1) by declining to grant default judgment in their favor on their counterclaim; (2) by determining that Fox and Stahlnecker met their burden to prove adverse possession based on the admissible evidence presented at the bench trial; and (3) by determining that WIS. STAT. § 706.09's bona fide purchaser defense was not a defense to Fox and Stahlnecker's claim. We address these issues in turn.

### I. Default Judgment

¶23 The Vieths argue that they are entitled to default judgment on their counterclaim because Fox and Stahlnecker did not file a timely reply. By way of background, after Fox and Stahlnecker initiated this lawsuit by filing their complaint, the Vieths filed an answer, affirmative defenses, and a counterclaim for trespass. The premise of the counterclaim was that, if Fox and Stahlnecker had

not acquired ownership of the disputed strip through adverse possession or acquiescence, they were liable for coming onto the disputed strip on two separate occasions. As discussed, Fox and Stahlnecker filed a reply denying that they were liable for trespass, but they filed it four days after the statutory time to file such a reply.

¶24 The Vieths moved to strike the late reply and sought default judgment on their counterclaim under WIS. STAT. § 806.02. That statute provides that "[a] default judgment may be rendered in favor of any party … if no issue of law or fact has been joined on any claim asserted in the complaint, counterclaim, or cross claim" and "the time for joining issue has expired." *See* § 806.02(1).

¶25 Fox and Stahlnecker opposed the Vieths' motions and also filed a motion to retroactively enlarge their reply deadline. They argued that default judgment should not be granted against them under WIS. STAT. § 806.02(1) because they did not fail to join any issues of law or fact asserted in the counterclaim. Among other things, they asserted that the Vieths' counterclaim for trespass was in direct opposition to their adverse possession and acquiescence claims, which were the subject of their complaint and the Vieths' answer, and, therefore, that the pertinent legal and factual issues were already joined. Additionally, Fox and Stahlnecker argued that the circuit court should accept their late reply based on excusable neglect and the interests of justice under WIS. STAT. § 801.15(2)(a), or, alternatively, that they would be entitled to relief from any default judgment under WIS. STAT. § 806.07.

¶26 The circuit court held a hearing on the parties' motions. At the hearing, the court denied the Vieths' motion and accepted Fox and Stahlnecker's tardy reply. The court concluded that default judgment should not be granted

under WIS. STAT. § 806.02(1) because the issues of law and fact presented by the Vieths' counterclaims had already been joined.[3]  The circuit court also concluded that, even if some issue of law or fact had not been joined, Fox and Stahlnecker's reply deadline should be enlarged based on excusable neglect and the interests of justice.

¶27    Whether to grant or deny a party's motion for default judgment is within the circuit court's discretion, and we review the decision for an erroneous exercise of discretion.  *See* ***Johns v. County of Oneida***, 201 Wis. 2d 600, 605, 549 N.W.2d 269 (Ct. App. 1996).  We will not find an erroneous exercise of discretion if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the circuit court's decision.  *See* ***Sukula v. Heritage Mut. Ins. Co.***, 2005 WI 83, ¶8, 282 Wis. 2d 46, 698 N.W.2d 610.  We generally look for reasons to sustain discretionary determinations by the circuit court.  ***Id.***

¶28    On appeal, the Vieths contend that the circuit court erroneously exercised its discretion.  They argue that default judgment was warranted because issues of law and fact were not joined or, in the alternative, they summarily assert that Fox and Stahlnecker's delay was not caused by excusable neglect.  For the reasons explained below, we conclude that the circuit court properly exercised its discretion.

---

[3] At times, the circuit court appeared to frame the issue as whether Fox and Stahlnecker were required to file a reply in response to the Vieths' counterclaims.  However, WIS. STAT. § 802.06 unambiguously requires parties to file a reply to any counterclaims.  Correctly stated, the issue is whether default judgment is the appropriate remedy for Fox and Stahlnecker's failure to timely file the required reply.

¶29 First, we agree with the circuit court that the majority of the legal and factual issues raised by the trespass counterclaim had already been joined by Fox and Stahlnecker's complaint and the Vieths' answer to that complaint. As the court reasoned, "the essence of the counterclaim basically is to re-assert the denial [of Fox and Stahlnecker's claimed ownership to the disputed strip] and assert an issue of trespass." The "central issue … is who owns this property," and the claims in the complaint and counterclaim both turn on that singular issue. Under those circumstances, "to say that … issue[s] of law and … fact haven't been joined, [does not] hold up."

¶30 Second, even if there was some technical failure to join issue, it would have been well within the circuit court's discretion to deny the Vieths' motion for default judgment on the ground that, if granted, the court would subsequently reopen the default judgment under WIS. STAT. § 806.07(1).

¶31 WISCONSIN STAT. § 806.07(1) provides a circuit court with discretion, "[o]n motion and upon such terms as are just," to "relieve a party or legal representative from a judgment" for specified reasons. These reasons include "[m]istake, inadvertence, surprise or excusable neglect" under para. (1)(a), and "[a]ny other reasons justifying relief from the operation of the judgment" under para. (1)(h).

¶32 A court may grant relief under WIS. STAT. § 806.07(1)(h) if extraordinary circumstances are present. *Miller v. Hanover Ins., Co.*, 2010 WI 75, ¶34, 326 Wis. 2d 640, 785 N.W.2d 493. In making this determination, the court considers a wide range of factors, including the following interest of justice factors: (1) "'whether the judgment was the result of a conscientious, deliberate and well-informed choice of the claimant;'" (2) "'whether the claimant received

12

the effective assistance of counsel;'" (3) "'whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments;'" (4) "'whether there is a meritorious defense to the claim;'" and (5) "'whether there are intervening circumstances making it inequitable to grant relief.'" *Johns*, 201 Wis. 2d at 608 (quoted source omitted). No finding of excusable neglect is required for a court to grant relief under § 806.07(1)(h). *Miller*, 326 Wis. 2d 640, ¶45. And Wisconsin precedent recognizes that a court may deny a motion for default judgment in the first instance on the basis that, if the court were to grant the default judgment, it would go on to reopen that judgment under § 806.07(1). *See Johns*, 201 Wis. 2d at 606 ("granting the default judgment and then reopening the judgment under § 806.07 would be a needless formality"); *see also Miller*, 326 Wis. 2d 640, ¶45.

¶33    Here, the circuit court expressly considered the five interest of justice factors and determined that they weighed in favor of enlarging Fox and Stahlnecker's reply deadline. More specifically, the court found that the failure to timely reply was a good faith mistake and not the result of a deliberate strategic choice. It found that the mistake could be attributed to the attorney, and not to Fox and Stahlnecker themselves. The court found that Fox and Stahlnecker's attorney had been in communication with the Vieths' attorney during the four-day period of delay, and that the Vieths were not prejudiced by the delay. It observed that there had been no judicial consideration of the merits of the case, and that Fox and Stahlnecker had a potentially meritorious defense to the Vieths' counterclaims—namely, the adverse possession claim that was the subject of their original complaint. It also noted that the law generally disfavors default judgments. The Vieths do not argue that any of these findings are clearly erroneous, nor do they

dispute that, based on these findings, the court could grant relief from a default judgment under WIS. STAT. § 806.07(1)(h).

¶34    Accordingly, the circuit court could have properly denied the Vieths' motion for default judgment on that basis.  *See Miller*, 326 Wis. 2d 640, ¶45; *Johns*, 201 Wis. 2d at 605-06.  We acknowledge that this was not the precise rationale provided by the circuit court.  However, an appellate court can affirm a circuit court's exercise of discretion on an alternative ground, *Glendenning's Limestone & Ready-Mix Co. v. Reimer*, 2006 WI App 161, ¶14, 295 Wis. 2d 556, 721 N.W.2d 704, and we do so here.  Accordingly, we need not separately consider the Vieths' assertion that Fox and Stahlnecker failed to show that their four-day delay in filing their reply was the result of excusable neglect.

## II.  Adverse Possession

¶35    We next address the Vieths' arguments that the circuit court erroneously determined that Fox and Stahlnecker proved they adversely possessed the disputed strip.  The Vieths argue that the circuit court improperly relied on inadmissible hearsay evidence as a part of its determination and, further, that the admissible trial evidence was insufficient to support the court's determination. We first address the Vieths' evidentiary argument about hearsay, and then turn to their argument about the sufficiency of the evidence.

### A.  Hearsay

¶36    The Vieths' hearsay argument is based on an out-of-court statement—an inquiry, really—that was allegedly made by Chellevold.  As mentioned, Chellevold was the son-in-law of the Vieths' immediate predecessor, Bloyer, and he did lawn care and maintenance on the Vieth parcel in the years

before the Vieths purchased it. In or around 2004, Chellevold removed the existing retaining wall, which was made of railroad ties, and he replaced it with the concrete block structure that was in place at the time the Vieths purchased the property. Chellevold passed away before the trial in this matter and therefore was not available to testify.

¶37     On appeal, the Vieths take aim at the circuit court's reliance on testimony that Chellevold "sought and received permission from [Fox and Stahlnecker] to replace the [retaining] wall." We observe that, apart from the testimony about Chellevold seeking permission to replace the retaining wall, the circuit court allowed the parties to elicit testimony about other out-of-court statements allegedly made by Chellevold, including some testimony that was elicited by the Vieths. However, the Vieths do not make any argument that the circuit court improperly relied on any other out-of-court statement by Chellevold. Accordingly, our focus remains on the testimony about Chellevold seeking permission to replace the retaining wall.

¶38     By way of background, the testimony in question was provided during Fox's direct examination. Fox's attorney inquired whether Chellevold had "ask[ed] about installing any part of the retaining wall on [Fox's] property or what [Chellevold and Bloyer] thought was [Fox's] property." The Vieths' attorney objected to this questioning as leading, and Fox's attorney rephrased his question. The Vieths' attorney did not object on any ground to the question as rephrased. Fox then testified that Chellevold braced the concrete blocks in a manner that sloped toward the Fox parcel. She testified that, "when they got up to the top block, … Mr. Chellevold came over and asked[,] …'Is it a problem if the top block is on your property?'" According to Fox, she said it was not a problem. The Vieths did not object to that aspect of Fox's testimony on any ground.

¶39     In its ultimate decision, the circuit court found it "significant" that Chellevold had asked Fox for permission to replace the retaining wall. As we understand it, the significance of Fox's testimony was the inference that, at the time the retaining wall was replaced, the owners of the Fox and Vieth parcels both believed that the western edge of the retaining wall marked the boundary between the parcels.

¶40     On appeal, the Vieths contend that this testimony from Fox contained inadmissible hearsay, and that the circuit court erroneously exercised its discretion by relying on it. We observe that the issue of Chellevold's out-of-court inquiry raises a host of questions about whether it should be considered hearsay at all,[4] and, if so, whether any hearsay exception applies.[5] Had the Vieths made a contemporaneous objection to Fox's testimony, we may have had occasion to address some or all of those questions on appeal.

¶41     However, the Vieths forfeited any such argument by failing to object to the questioning and testimony at trial. *State v. Hartman*, 145 Wis. 2d 1, 9, 426 N.W.2d 320 (1988) (an evidentiary objection must clearly state the specific ground upon which the objection is based, and an objection preserves for appeal

---

[4] For example, Chellevold's out-of-court inquiry could implicate rules concerning verbal utterances that do not assert any fact, or that are admitted for something other than the truth of the matter asserted. *See, e.g.*, *Caccitolo v. State*, 69 Wis. 2d 102, 107-08, 230 N.W.2d 139 (1975) (concluding that a witness's testimony that the declarant asked for his permission to use the witness's shed was an utterance, and not hearsay, because the declarant was not asserting any fact); *see also* DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES; WISCONSIN EVIDENCE § 801.204 (4th ed. 2017) (addressing non-assertive utterances).

[5] For example, WIS. STAT. § 908.03(20) provides a hearsay exception for statements of reputation concerning boundaries. Based on our review, this exception has never been interpreted by any published appellate decision in Wisconsin.

only the specific grounds stated in the objection); *see also* **State v. Kutz**, 2003 WI App 205, ¶27, 267 Wis. 2d 531, 671 N.W.2d 660 ("The purpose of requiring an adequate objection to preserve an issue for appeal is to give the parties and the court notice of the disputed issue, as well as a fair opportunity to prepare and address it in a way that most efficiently uses judicial resources.").

¶42    The Vieths contend that they sufficiently preserved their objection to Fox's testimony when they objected on hearsay grounds to similar questioning that had previously been directed at Stahlnecker.[6] The Vieths also suggest that they preserved their objection to Fox's testimony when they objected to two questions posed to another witness, whom Chellevold had hired to mow the lawn.[7] The Vieths cite to **State v. Matson**, 2003 WI App 253, ¶32, 268 Wis. 2d 725, 674 N.W.2d 51, for the proposition that, having unsuccessfully objected to the questioning of those other witnesses on hearsay grounds, "it was not necessary … to continue to make objections [to Fox's testimony] that would be futile."

¶43    We disagree. **Matson** does not stand for the broad proposition that, having lodged hearsay objections to questioning of prior witnesses at trial, that party preserves its objections to all such questions eliciting hearsay going forward.

¶44    In **Matson**, the defendant had been convicted of criminal offenses and was about to be sentenced. **Id.**, ¶1. An investigating officer sent a letter to the

---

[6] Notably, although Stahlnecker was asked about a conversation in which Chellevold sought permission to replace the retaining wall, the Vieths acknowledge that Stahlnecker did not testify about any such conversation.

[7] These questions had nothing to do with the testimony relied on by the circuit court— that Chellevold "sought and received permission from [Fox and Stahlnecker] to replace the [retaining] wall."

circuit court which asked it to reject the joint sentencing recommendation and impose the maximum sentence. *Id.* Prior to sentencing, Matson's counsel filed a motion to exclude the letter from the court's consideration at sentencing, but the court denied the motion. *Id.*, ¶¶4-8. On appeal, Matson argued that the sentencing court had improperly considered the letter. *Id.*, ¶1. The State argued that Matson forfeited any objection to the letter based on his submissions and arguments at sentencing. *Id.*, ¶28. We concluded that Matson sufficiently preserved his objection to the letter. *Id.*, ¶32. Because Matson already objected to the court's consideration of the letter and his objections were unequivocally denied, we stated that "[f]urther objections would most certainly have proved futile," and that Matson's submissions at sentencing were "merely a tactical way to contend with the circuit court's decision and cannot be considered [forfeiture] of the issue." *Id.*

¶45 The result in *Matson* is consistent with the general rule that "[a] definitive pretrial ruling preserves an objection to the admissibility of evidence without the need for an objection at trial, as long as the facts and law presented to the court in the pretrial motion are the same as those that arise at trial." *Kutz*, 267 Wis. 2d 531, ¶27. *Matson* did not carve out a broad exception to the rule that, generally speaking, litigants must object to evidence during trial in order to preserve an evidentiary error for appellate review. *Hartman*, 145 Wis. 2d at 9; *Kutz*, 267 Wis. 2d 531, ¶27. Accordingly, we conclude that the Vieths forfeited any hearsay objection to Fox's testimony, and we decline to exercise our discretion to overlook the forfeiture.

### B. Sufficiency of the Evidence

¶46 We now address the Vieths' argument that the evidence introduced by Fox and Stahlnecker was insufficient to prove adverse possession. "'Adverse

possession is a legal action that enables a party to obtain valid title of another's property by operation of law.'" ***Kruckenberg v. Krukar***, 2017 WI App 70, ¶3, 378 Wis. 2d 314, 903 N.W.2d 164 (quoting ***Wilcox v. Estate of Hines***, 2014 WI 60, ¶19, 355 Wis. 2d 1, 849 N.W.2d 280); *see also* WIS. STAT. § 893.25(1).

¶47 The requirements for an adverse possession claim that is not founded on a written instrument are set forth in WIS. STAT. § 893.25. That statute "codifies the common law elements of adverse possession." ***Wilcox***, 355 Wis. 2d 1, ¶20. It permits a party to acquire title to real property by showing that the party (along with any predecessors in interest) has adversely possessed the property for an uninterrupted period of twenty years. *See* § 893.25(1). Real estate is possessed adversely under the statute only if "the person possessing it, in connection with his or her predecessors in interest, is in actual continued occupation under claim of title, exclusive of any other right," and only to the extent it is "actually occupied." *See* § 893.25(2)(a), (b). In addition, the property possessed must either be "protected by a substantial enclosure," or "usually cultivated or improved." *See* § 893.25(2)(b)1., 2.; *see also* ***Peter H. & Barbara J. Steuck Living Tr. v. Easley***, 2010 WI App 74, ¶13, 325 Wis. 2d 455, 785 N.W.2d 631.

¶48 "In order to constitute adverse possession, 'the use of the land must also be open, notorious, visible, exclusive, hostile, and continuous,'" such as would apprise a reasonably diligent landowner and the public "'that the possessor claims the land as his own.'" ***Steuck Living Tr.***, 325 Wis. 2d 455, ¶14 (quoting ***Pierz v. Gorski***, 88 Wis. 2d 131, 137, 276 N.W.2d 352 (Ct. App. 1979)). The type of land at issue, as well as the "size and nature of the disputed area[,] are relevant in deciding if the use is sufficient to apprise the true owner of an adverse claim." ***Steuck Living Tr.***, 325 Wis. 2d 455, ¶14.

19

¶49 A party seeking to claim title through adverse possession bears the burden of proving the above elements by "clear and positive" evidence. *Id.*, ¶15. The evidence should be strictly construed against the claimant, and all reasonable presumptions are made in favor of the title holder. *Id.*

¶50 "Review of an adverse possession claim presents a mixed question of fact and law." *Wilcox*, 355 Wis. 2d 1, ¶15. "We accept the circuit court's findings of fact unless they are clearly erroneous," and we review de novo whether those facts are sufficient to fulfill the legal standard for adverse possession. *Id.*

¶51 As noted above, the circuit court determined that Fox and Stahlnecker established that they had adversely possessed the disputed strip, that their adverse possession claim ripened no later than 2013, and that their possession of the disputed strip continued through 2018. In reaching these conclusions, the circuit court relied heavily on the "uncontradicted" nature of Fox's and Stahlnecker's testimony regarding their occupation of the disputed strip between 1993 and 2018. The court noted that the Vieths presented little to no competent or credible evidence regarding Fox and Stahlnecker's use of the disputed strip during that time period. The Vieths nonetheless contend that Fox's and Stahlnecker's testimony, upon which the circuit court's factual findings were based, was insufficient to establish the essential elements of adverse possession. Although they assert that the circuit court's findings "were generalizations that expanded on what testimony was actually given at trial," they do not contend, and do not attempt to persuade us, that any of the court's findings were clearly erroneous. We therefore accept the court's factual findings as true, and we review de novo whether the facts found by the court fulfill the essential elements that the Vieths challenge.

20

¶52　The Vieths argue that Fox's and Stahlnecker's testimony was insufficient to establish "actual continued occupation" under WIS. STAT. § 893.25(2)(a), and also that their activities in the disputed strip did not satisfy the requirement that the property be "usually cultivated or improved" under § 893.25(2)(b)2.[8]　We address these requirements in turn.

### 1. Actual Continued Occupation

¶53　WISCONSIN STAT. § 893.25(2)(b) requires that the adverse possessor "actually occupy" the land in question, and § 893.25(1) and (2)(a) require that they do so for a continuous period of twenty years.　Our cases define "actual occupancy" as "the ordinary use of which the land is capable and such as an owner would make of it." *Burkhardt v. Smith*, 17 Wis. 2d 132, 138, 115 N.W.2d 540 (1962).　The ordinary use of which the land is capable depends on the size and nature of the land in question. *Id.*

¶54　As an initial matter, the Vieths do not challenge that Fox and Stahlnecker's use of the disputed strip as an extension of their backyard was anything but the "ordinary use of which the land is capable," and what "a true owner would make of it," given its size, location, and nature. *Id.*　We too conclude that Fox and Stahlnecker's use of the disputed strip was an ordinary use. Indeed, after the Vieths attempted to repossess the disputed strip, they also used it

---

[8] The Vieths also challenge the circuit court's determination that the property was protected by a substantial enclosure, but we need not address that argument because our conclusion that Fox and Stahlnecker usually cultivated and improved the disputed strip makes it unnecessary to consider the substantial enclosure requirement in WIS. STAT. § 893.25(2)(b)1.

as an extension of their backyard, and they engaged in similar lawn care and plant-related activities as those engaged in by Fox and Stahlnecker.

¶55    Rather, the Vieths assert that Fox and Stahlnecker's activities in the disputed strip were too sporadic, or too occasional, to be "continuous," and thus Fox and Stahlnecker were not in "actual continued occupation" under WIS. STAT. § 893.25(1) and (2)(a).  The Vieths assert that the only activity that was remotely "continuous" was Stahlnecker's mowing of the grass.

¶56    We reject this argument because it misconstrues the continuity requirement, which WIS. STAT. § 893.25(1) codifies.  To satisfy the continuity requirement, the adverse possessor must adversely possess the land in question for an uninterrupted period of twenty years.  However, it is not required that the adverse possessor continuously perform all of the activities which together comprise their "actual occupancy" for the 20-year period.  Nor is it required that those activities be performed at a specific frequency, as the Vieths suggest.  *See Burkhardt*, 17 Wis. 2d at 139.  Rather, our cases establish that the "[t]he requirement of continuity of possession … is satisfied by activities which are seasonal in character and which are commensurate with and appropriate to seasonal uses, needs, requirements and limitations, having regard for the location and the adaptability of the land to such use."  *Id.*

¶57    The Vieths' argument also appears to misconstrue the requirement of "actual occupancy."  "Actual occupancy" does not require a constant physical occupation of the land.  *See id.* at 137 (explaining that "actual continued occupation" without enclosure "need not be characterized by constant physical occupancy").  The performance of ordinary seasonal activities, consistent with the needs of the land, can amount to "actual occupancy."  *Id.*

22

¶58 Here, the circuit court found that Fox and Stahlnecker performed many of the ordinary seasonal activities that the owner of a residential backyard would perform. They mowed the grass, pulled and trimmed weeds, planted perennials and flowers, maintained the perennials and flowers by watering them, pinching off old buds and splitting their bulbs, trimmed the cedar trees, raked the leaves, and placed a downspout in the disputed strip during the summer months. Although the record does not contain testimony specifying the precise frequency with which most of these acts occurred, the evidence and the circuit court's findings reasonably suggest that Fox and Stahlnecker performed them consistent with the seasonal needs of the land. The circuit court did not err in determining that collectively, these seasonal activities were sufficient to amount to "actual occupancy" under WIS. STAT. § 893.25(2)(b). And, because the court found that Fox and Stahlnecker's use of the disputed strip as a backyard was uninterrupted and continued for twenty years, the court did not err in determining that they were in "actual continued occupation" of the disputed strip under § 893.25(2)(a).

¶59 Relatedly, the Vieths argue that Fox and Stahlnecker failed to prove that they "actually occupied" the entirety of the disputed strip under WIS. STAT. § 893.25(2)(b) because they mowed only its northern portion, and the southern portion consisted of dirt and trees that could not be mowed. But this argument is contrary to the circuit court's findings of fact, which are not clearly erroneous. The court found that Fox and Stahlnecker used the entirety of the disputed strip as an extension of their backyard by planting and caring for the perennials and flowers in the northern and southern portions alike, by pulling weeds in both portions, by trimming the trees in both portions, and by raking the leaves in both portions. The court did not err in concluding that these activities sufficed to

establish that Fox and Stahlnecker "actually occupied" the entirety of the disputed strip.

## 2.  Usual Cultivation and Improvement

¶60    We now turn to the Vieths' argument that Fox and Stahlnecker did not "usually cultivate or improve" the disputed strip under WIS. STAT. § 893.25(2)(b)2.  In its essence, the Vieths' argument is that the lawn care and gardening activities undertaken by Fox and Stahlnecker do not constitute "usual cultivation" or "improvement" as a matter of law.

¶61    WISCONSIN STAT. § 893.25(2)(b)2. does not define "cultivation" or "improvement," but, under our precedents, land is "usually cultivated and improved" when it is "put to the exclusive use of the occupant as the true owner might use such land in the usual course of events." *Burkhardt*, 17 Wis. 2d at 138. Such use of the land must be sufficiently visible to give notice of exclusion to the true owner. *Id.*  The size and nature of the disputed area are both relevant in deciding if the use is sufficient to apprise the true owner of the adverse claim. *Steuck Living Tr.*, 325 Wis. 2d 455, ¶14.  Accordingly, what may not constitute cultivation or improvement of wild lands may be sufficient to constitute cultivation or improvement in a residential neighborhood. *See Pierz*, 88 Wis. 2d at 136-37 (citing *Austin v. Holt*, 32 Wis. 478, 490-91 (1873)).

¶62    Before discussing whether the circuit court erred when it determined Fox and Stahlnecker "usually cultivated and improved" the disputed strip, we pause briefly to comment on its size and nature.  As noted, the disputed strip is located on the boundary of two residential backyards in a city subdivision.  In 1993, when Fox purchased the Fox parcel and first began occupying the disputed strip, it had already been developed and improved with landscaping features

including the row of cedar trees, bushes, perennials, and flowers. Although the circuit court found that Fox and Stahlnecker "added to" the existing landscaping features by planting more bushes, perennials, and flowers, the parties appear to agree that Fox and Stahlnecker did not substantially change the appearance of the disputed strip. Rather, they maintained and added to the landscaping features that existed when Fox purchased the parcel.

¶63  The Vieths contend that Fox and Stahlnecker's activities in the disputed strip fall short of usual cultivation and improvement. We now consider and reject their various arguments on this point.

¶64  The Vieths assert that Fox and Stahlnecker's "plant-related activities" do not constitute "cultivation" or "improvement" within the meaning of WIS. STAT. § 893.25(2)(b)2. To that end, they define "cultivation" as the raising of crops, and they define "improvement" to mean the erection of permanent structures or a garden. However, the Vieths' narrow definitions of "cultivation" and "improvement" are not supported by the statutory language or any of the cases they cite. The statute leaves those terms undefined, and our cases have defined "cultivation and improvement" broadly as putting the land "to the exclusive use of the occupant as the true owner might use such land in the usual course of events." *Burkhardt*, 17 Wis. 2d at 138. The Vieths do not identify any legal authority to support the proposition that "plant-related activities" cannot constitute a usual and exclusive use of residential land.

¶65  In their reply brief, the Vieths cite to *Engel v. Parker*, 2012 WI App 18, 339 Wis. 2d 208, 810 N.W.2d 861, for the proposition that "casual weeding [is] not enough to establish adverse possession." However, even if we were to accept the Vieths' interpretation of *Engel*, that opinion does not help the Vieths.

25

The circuit court's findings about Fox and Stahlnecker's plant-related activities in this case amount to much more than "casual weeding," and the Vieths do not show that the court's findings were clearly erroneous.

¶66 To the extent that the Vieths mean to argue that Fox and Stahlnecker's plant-related activities in the disputed strip did not sufficiently change its appearance to put the rightful owner on notice of the adverse possession claim, they cite no authority that would support that argument. To be sure, our precedents require that an adverse possessor's cultivation and improvement substantially change the appearance of "wild lands." *Pierz*, 88 Wis. 2d at 136-37 ("Improvements sufficient to apprise the true owner of adverse possession of wild lands must substantially change the character of the land." "Where the land remains 'wild' after the improvements are completed, no owner should be held to notice of the improvements." (citing *Austin v. Holt*, 32 Wis. at 490-91)). In such cases, the transformation of the land from "wild" to developed serves to notify the titleholder that another has claimed the land as their own, and serves to rule out the possibility that evidence of adverse use was caused by benign trespassers. *Pierz*, 88 Wis. 2d at 138. However, the Vieths do not point to any authority imposing such a requirement upon the adverse possessor of developed residential land like the disputed strip at issue here. And, again, the circuit court found that Fox and Stahlnecker's cultivation and improvements were sufficiently visible to alert the owner of what became the Vieth parcel that they claimed the disputed strip as their own.

¶67 Finally, in their reply brief, the Vieths contrast Fox and Stahlnecker's activities with those of the adverse possessor in *Burkhardt*, and they assert that Fox and Stahlnecker's activities were qualitatively and quantitatively less than what was proven to constitute cultivation and improvement in that case.

26

In **Burkhardt**, 17 Wis. 2d 132, our supreme court concluded that the adverse possessor had "usually cultivated and improved" a rural lakefront lot by building a cottage, a partial fence, a terrace walk, and a rock garden; by installing a clothesline and septic tank; by cutting and burning dead trees, bushes, and stumps; and by spading the entire area and planting blue grass. **Id.** at 134-36. However, **Burkhardt** cannot be read as setting a minimum qualitative or quantitative threshold for usual cultivation and improvement. In **O'Kon v. Laude**, 2004 WI App 200, 276 Wis. 2d 666, 688 N.W.2d 747, for example, the purported adverse possessors mowed the grass, planted raspberries, piled debris, and maintained a garden on a strip of land between two residential lots, **id.**, ¶¶16-17, and we concluded that they raised a genuine issue of material fact as to whether they had usually cultivated and improved that strip of land, **id.**, ¶¶2-3, 18. Although these activities may not have been sufficiently visible in a forested area to apprise a reasonably diligent landowner of the adverse claim, we concluded that they might be sufficient in the context of adjoining residential lots. **Id.**, ¶¶2-3. Likewise, in **Otto v. Cornell**, 119 Wis. 2d 4, 349 N.W.2d 703 (1984), our supreme court concluded that an adverse possessor had usually cultivated and improved an area of land between two adjoining residential lots by planting ornamental trees to establish a southern boundary line, mowing the area around the trees, and posting a thermometer on one of the trees. **Id.** at 6, 8.

¶68 Based on the circuit court's findings, Fox and Stahlnecker undertook at least as many activities in the disputed strip as the adverse possessors in **O'Kon** and **Otto**, if not more. And they certainly did more than the "casual weeding" mentioned in **Engel**. Given the compact size of both the disputed strip and the residential lots upon which it lies, the circuit court did not err when it determined

that Fox and Stahlnecker's activities were sufficiently visible to apprise a reasonably diligent landowner of their adverse possession claims.

### III. The Bona Fide Purchaser Defense

¶69    Having rejected the argument that Fox and Stahlnecker failed to prove adverse possession, we turn to the Vieths' argument that they have a defense to the adverse possession claim based on the bona fide purchaser defense set forth in WIS. STAT. § 706.09(1)(b) and (i).

¶70    Generally speaking, WIS. STAT. § 706.09 "operates as a 'title curative' statute" that "corrects defects in title to real estate" and "frees property of adverse claims and interests." *Turner v. Taylor*, 2003 WI App 256, ¶¶8, 16, 268 Wis. 2d 628, 673 N.W.2d 716 (quoted source omitted).  The statute functions as an affirmative defense for bona fide purchasers of real property. *Id.*, ¶16.  That is, the statute extinguishes otherwise legitimate adverse claims (or interests) in the property if the validity or priority of the adverse claim is based upon one of eleven situations enumerated in § 706.09(1)(a)-(k).  *Id.*  However, the defense is not available to purchasers who have notice of the adverse claim, as defined in § 706.09(2), at the time of the purchase.  *Id.*, ¶8.

¶71    The parties dispute whether WIS. STAT. § 706.09 can be used as an affirmative defense to adverse possession claims and, if so, whether the circuit court correctly determined that the Vieths had notice of Fox and Stahlnecker's adverse possession claim at the time they purchased the Vieth parcel.

### A.  Availability of the Defense

¶72    We begin by briefly outlining the parties' arguments about the availability of the bona fide purchaser defense to an adverse possession claim.  As

we now explain, the parties arguments do not definitively resolve whether WIS. STAT. § 706.09 can be a defense to a ripened adverse possession claim.

¶73     WISCONSIN STAT. § 706.09 provides, in relevant part:

> (1) WHEN CONVEYANCE IS FREE OF PRIOR ADVERSE CLAIM.   A purchaser for valuable consideration, without notice as defined in sub. (2), … shall take and hold the estate or interest purported to be conveyed to such purchaser free of any claim adverse to or inconsistent with such estate or interest, if such adverse claim is dependent for its validity or priority upon:
>
> ….
>
> (b) *Conveyance outside chain of title not identified by definite reference.*   Any conveyance, transaction, or event, not appearing of record in the chain of title to the real estate affected, unless such … event is identified by definite reference in an instrument of record in such chain.…
>
> ….
>
> (i) *Facts not asserted of record.*   Any fact not appearing of record, but the opposite or contradiction of which appears affirmatively and expressly in a conveyance, affidavit or other instrument of record in the chain of title of the real estate affected for 5 years.   Such facts may, without limitation by noninclusion, relate to … possession or adverse possession[.]

¶74     The Vieths assert that the ripening of Fox and Stahlnecker's adverse possession claim in 1993 is an "event not appearing of record in the chain of title" under WIS. STAT. § 706.09(1)(b).  *See O'Neil v. Reemer*, 2003 WI 13, ¶10, 259 Wis. 2d 544, 657 N.W.2d 403 (referring to the ripening of an adverse possession claim as an "event" under a different statute, WIS. STAT. § 893.33).  The Vieths also assert that the twenty-plus years of adverse possession is a "fact not appearing of record, … the opposite or contradiction of which appears affirmatively and expressly in [their deed]," as contemplated by § 706.09(1)(i).

¶75 By contrast, Fox and Stahlnecker contend that the bona fide purchaser defense is wholly inapplicable to adverse possession claims. They point out that, under Wisconsin law, adverse possession claims are interests in land that are acquired "by operation of law." *See Wilcox*, 355 Wis. 2d 1, ¶19. And they rely on WIS. STAT. § 706.001(2)(a), which provides that "transactions [by] which an interest in land is affected … [b]y act or operation of law" are excluded from the scope of WIS. STAT. ch. 706.

¶76 Each party cites a case to support its position, but neither case squarely addresses the viability of WIS. STAT. § 706.09 as a defense to an adverse possession claim.[9] Based on our own review, no published or persuasive Wisconsin authority has examined this question.

¶77 Accordingly, the parties' arguments and legal citations do not definitely resolve whether WIS. STAT. § 706.09(1)(b) or (1)(i) can be a defense to adverse possession claims. Rather than deciding that issue, we assume without

---

[9] Fox and Stahlnecker cite to *Rock Lake Estates Unit Ownership Ass'n v. Lake Mills*, 195 Wis. 2d 348, 536 N.W.2d 415 (Ct. App. 1995). In that case, the court determined that a claimant could not rely on WIS. STAT. § 706.09 to create a constructive easement against purchasers who had notice of the adverse claim. The court reasoned that the statute acts as a defense against adverse interests, but does not create ownership interests in land. The reasoning in *Rock Lake Estates* does not foreclose the Vieths' reliance on § 706.09 because the Vieths are attempting to use the statute as a defense to Fox and Stahlnecker's adverse claim, and are not attempting to create an interest in land based on the language of § 706.09.

The Vieths cite to *Anderson v. Quinn*, 2007 WI App 260, 306 Wis. 2d 686, 743 N.W.2d 492. In that case, the court determined that WIS. STAT. § 706.09(1)(b) did not extinguish a condominium association's improperly recorded easements because the buyer had notice of the use of the easements. *Id.*, ¶¶19-23. In reaching this conclusion, the *Anderson* court stated that nothing in § 706.09(1)(b) distinguishes between prescriptive rights and improperly recorded rights. *Id.*, ¶28. However, the *Anderson* court did not address adverse possession claims at all, much less grapple with the issue of whether § 706.09 could be used as a defense to a ripened adverse possession claim.

deciding that § 706.09(1)(b) or (1)(i) could be such a defense, provided that the purchaser did not have notice of the adverse claim. However, we conclude that the defense does not apply here because the Vieths have not shown that the circuit court erred when it determined that the Vieths had affirmative notice of Fox and Stahlnecker's adverse claim.

## B. Notice

¶78    As explained, WIS. STAT. § 706.09 could be an affirmative defense only if the bona fide purchaser is "without notice" of the adverse claim, as defined in subsec. (2). In this case, the circuit court determined that the Vieths had notice of Fox and Stahlnecker's adverse claim to the disputed strip and, for reasons we now explain, the Vieths have not shown that that determination is clearly erroneous.[10]

¶79    Under the statute, "a purchaser has notice of a prior outstanding claim or interest" if, "at the time such purchaser's interest in the property arises in law or equity," the purchaser had "notice of record," *see* WIS. STAT. § 706.09(2)(b), or "affirmative notice," *see* § 706.09(2)(a). Although Fox and Stahlnecker contend that the Vieths had record notice of Fox and Stahlnecker's claim, the circuit court did not make any express findings on this topic. It instead

---

[10] The parties do not point us to any authority addressing the appropriate standard with which to review the circuit court's affirmative notice determination. However, the Vieths refer to the circuit court's determination that the Vieths had affirmative notice as a finding and, as such, they appear to concede that notice is a finding of fact. This is consistent with how findings about constructive notice have been described in other legal contexts. *See Correa v. Woodman's Food Market*, 2020 WI 43, ¶¶13-15, 391 Wis. 2d 651, 943 N.W.2d 535. Accordingly, we assume without deciding that the court's determination about notice is a finding of fact, which we uphold unless clearly erroneous. *See Haase v. Badger Mining Corp.*, 2004 WI 97, ¶17, 274 Wis. 2d 143, 682 N.W.2d 389.

grounded its conclusion on the fact that the Vieths had notice under § 706.09(2)(a), which governs affirmative notice.

¶80 WISCONSIN STAT. § 706.09(2)(a) addresses "affirmative notice apart from the record of the existence of such prior outstanding claim." The statute goes on to explain that affirmative notice includes:

> notice, actual or constructive, arising from use or occupancy of the real estate by any person at the time such purchaser's interest therein arises, whether or not such use or occupancy is exclusive; but no constructive notice shall be deemed to arise from use or occupancy unless due and diligent inquiry of persons using or occupying such real estate would, under the circumstances, reasonably have disclosed such prior outstanding interest; nor unless such use or occupancy is actual, visible, open and notorious[.]

Based on this text, we understand "affirmative notice" to encompass actual notice and constructive notice, including but not limited to constructive notice based on actual, visible, open, and notorious occupancy of the property in question.

¶81 Here, the circuit court found that the Vieths had affirmative notice under WIS. STAT. § 706.09(2)(a). For reasons we now explain, the Vieths have not persuaded us that the circuit court's finding is clearly erroneous.

¶82 First, the circuit court found that the Vieths had affirmative notice based on the appearance of the disputed strip itself, in particular the visible demarcation caused by the retaining wall and the trees behind it. The Vieths testified that they visited the property multiple times prior to purchasing it, and that they walked its boundaries on several occasions. In so doing, the Vieths observed the concrete block retaining wall and the row of mature cedar trees that was in existence at that time, restricting access to the disputed strip. The circuit court found that the retaining wall was a "blatantly obvious physical barrier

32

between the two properties." Although we have not considered whether the retaining wall and trees could constitute a "substantial enclosure" under WIS. STAT. § 893.25(2)(b)1., the circuit court properly found that they created a visible demarcation between the Fox parcel and the disputed strip.

¶83 According to the circuit court, this visible demarcation would have caused a potential purchaser to question whether the disputed strip was a part of the Fox parcel. Indeed, the court found that the visible demarcation did actually cause John Vieth to "do further inquiry regarding the boundary lines of the property." These findings are not clearly erroneous.

¶84 Second, the circuit court's affirmative notice determination was bolstered by the use and occupancy of the disputed strip by Fox and Stahlnecker and their tenants. As noted above, Fox and Stahlnecker moved out of the Fox property in 2015, and the parties dispute the extent to which their tenants continued to maintain the disputed strip thereafter. Fox and Stahlnecker testified that their tenants continued to maintain the property up through 2018.[11] By contrast, the Vieths contend that, when they purchased the Vieth parcel in 2018, the entire area west of the retaining wall, including the disputed strip and the yard of the Fox parcel, was "overgrown" and "full of debris." John Vieth specifically testified that, after he purchased the parcel, he removed "container after container of debris." Although the circuit court found that the Vieths had notice of the

---

[11] According to Fox and Stahlnecker, the tenants continued to mow and maintain the disputed strip. Fox testified that she and Stahlnecker frequently drove by the Fox parcel and would regularly check to see whether their yard, including the disputed strip, was being mowed. Stahlnecker also testified that after moving, he mowed and cared for the disputed strip a couple of times when the tenants "had trouble with the lawnmower."

adverse claim, that the appearance of the disputed strip provided such notice, and that Fox and Stahlnecker's adverse possession of the disputed strip continued until 2018, the court did not expressly credit Fox and Stahlnecker's testimony that the disputed strip was continuously maintained, nor did it expressly credit the Vieths' testimony that the disputed strip was overgrown and full of debris.

¶85    We conclude that either party's version of events could support the circuit court's finding that the appearance of the disputed strip provided notice of the adverse claim.  For instance, if, as Fox and Stahlnecker contend, their tenants continued to occupy, cultivate, and improve the disputed strip in an open, notorious, visible manner, then the Vieths had constructive notice of Fox and Stahlnecker's adverse claim under WIS. STAT. § 706.09(2)(a).  Although the Vieths contend that they never observed the tenants actively performing any maintenance activities in the disputed strip, a potential purchaser need not actually observe another person occupying the land to have notice under the terms of § 706.09(2)(a).  Rather, visible cues of another's occupancy suffice to afford notice under § 706.09(2)(a).  *See* ***Hoey Outdoor Advertising, Inc. v. Ricci***, 2002 WI App 231, ¶¶19-20, 256 Wis. 2d 347, 653 N.W.2d 763 (concluding that a billboard situated on purchaser's property represented another's use or occupancy of the land and provided purchaser with constructive notice of the adverse claim).  The cultivated and maintained appearance of the disputed strip could function as such a cue.

¶86    Alternatively, if, as the Vieths contend, the entire area west of the retaining wall was completely unkempt, "overgrown," and "full of debris," a potential purchaser would naturally wonder whether the strip, which was overgrown and filled with debris, was part of the yard of the Fox parcel, which was likewise overgrown and filled with debris.  Further, if as the Vieths testified,

34

the debris included trash, then the presence of another's trash in the disputed strip should have alerted them to the possibility of another's occupancy of the disputed strip. *See Hoey Outdoor Advertising, Inc.*, 256 Wis. 2d 347, ¶¶19-20.

¶87 Finally, the municipal GIS map John Vieth consulted prior to committing to purchase the Vieth parcel supports the circuit court's finding that the Vieths had affirmative notice of the claim. The GIS map was available on the Lafayette County parcel viewer website, and it was attached to the online listing for the property. John Vieth testified that, prior to purchasing the parcel, he looked at the municipal GIS map on several occasions and relied on that map to ascertain the parcel's boundaries.[12]

¶88 The circuit court found that the municipal GIS map depicts a boundary line between the parcels that cuts through Fox and Stahlnecker's concrete porch. That is, the municipal GIS map depicts the Vieth parcel extending so far west that it not only encompasses the disputed strip, but also part of the structure that constitutes Fox and Stahlnecker's home. The Vieths assert that the court's finding about the municipal GIS map is clearly erroneous, and that the map shows their western boundary extending to, but not encroaching into, the concrete porch. However, our own review of the documentary evidence is consistent with the circuit court's finding—the GIS map John Vieth consulted depicts the

---

[12] Even though this map is not "of record" under WIS. STAT. § 706.09(2)(b), it was publicly available information accessible from an official source. *See Hoey Outdoor Advertising, Inc. v. Ricci*, 2002 WI App 231, ¶19, 256 Wis. 2d 347, 653 N.W.2d 763 (stating that a purchaser can gain notice from records in the office of the register of deeds, or "other public records to discover rights that usually are not recorded in the office of the register of deeds"); *Bump v. Dahl*, 26 Wis. 2d 607, 614-15, 133 N.W.2d 295 (1965) (same).

structure that belongs to Fox and Stahlnecker encroaching onto a part of the Vieth parcel.

¶89 The encroachment of a physical structure owned by another, onto a potential purchaser's property, constitutes adverse occupation, and the circuit court found that the municipal GIS map unquestionably showed such an encroachment. Although the occupation visible on the GIS map may not have alerted the Vieths to the exact location and extent of Fox and Stahlnecker's adverse possession, the circuit court found that it should have at least alerted them to the possibility of a border dispute. *See Hoey Outdoor Advertising, Inc.*, 256 Wis. 2d 347, ¶¶19-20 (concluding that the mere presence of a billboard on the property provided purchaser with affirmative notice of an adverse claim that should have prompted further inquiry).

¶90 Before concluding our analysis, we address one additional argument by the Vieths about notice. The Vieths contend that they did not have constructive notice because due and diligent inquiry would not reasonably have disclosed Fox and Stahlnecker's ownership of the disputed area. WIS. STAT. § 706.09(2)(a) (providing that "no constructive notice shall be deemed to arise from use or occupancy unless due and diligent inquiry of persons using or occupying such real estate would, under the circumstances, reasonably have disclosed such prior outstanding interest"). For this proposition, the Vieths rely on their own pre-purchase inquiry into the parcel's boundaries, which they characterize as due and diligent. They point to the fact that a title search would not have revealed any adverse possession claim, and that, prior to purchasing the property, they observed its physical characteristics, visited it with the listing agent, compared landmarks on the GIS map with other neighborhood landmarks including fences, obtained title insurance, and read the closing paperwork provided by the title company.

¶91 The Vieths' assertions about their "due and diligent inquiry" are not consistent with the unambiguous statutory language about what a "due and diligent inquiry" entails. Under WIS. STAT. § 706.09(2)(a), a purchaser will not be deemed to have constructive notice arising from use or occupancy if due and diligent inquiry *of the persons occupying the land* would not have disclosed the occupier's adverse claim. Here, the Vieths concede that they never asked Fox, Stahlnecker, or their tenants about the boundary. John Vieth testified that he did not feel it "necessary … to interview neighbors" because he was "confident" that he had ascertained the true boundaries of the parcel.

¶92 Nor for that matter is there any evidence that the Vieths obtained any information about the boundaries from their predecessors in interest. Indeed, when John Vieth asked the listing agent about the location of the boundaries, the agent indicated that he could not and would not identify the location of the boundary lines and advised the Vieths to obtain a survey. However, the Vieths did not attempt to obtain a survey until after they had already purchased and moved into the property. Nor is there any suggestion that the Vieths asked Chellevold and his wife, who attended the closing as representatives of the seller's estate, about the location of the boundary. Under the circumstances, the Vieths do not persuade us that the circuit court should have determined that "due and diligent inquiry of persons using or occupying such real estate" would not "reasonably have disclosed" Fox and Stahlnecker's adverse possession claim to the disputed strip. WIS. STAT. § 706.09(2)(a).

¶93 Accordingly, we conclude that the circuit court did not err when it found that the Vieths had affirmative notice of Fox and Stahlnecker's adverse

claim, and that WIS. STAT. § 706.09 did not extinguish Fox and Stahlnecker's claim to the disputed strip when the Vieths purchased the Vieth parcel in 2018.[13]

## CONCLUSION

¶94    For the reasons explained above, we conclude that Fox and Stahlnecker established that they adversely possessed the disputed strip under WIS. STAT. § 893.25, and that the Vieths do not have a defense to the adverse possession claim under WIS. STAT. § 706.09.   Accordingly, we affirm the circuit court's judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[13] The Vieths also make a separate argument about what they refer to as their "waiver defense."   According to the Vieths, this defense would be based on the fact that Fox and Stahlnecker commissioned a survey in 2010 that purported to show that the boundary line was not where Fox and Stahlnecker thought it should be.   The gist of the Vieths' argument is that Fox and Stahlnecker waived their right to file a legal action to quiet title in 2020 by not filing such an action in 2010, or at any time prior to the Vieths' purchase of the Vieth parcel.

The Vieths do not cite any law suggesting that waiver is an affirmative defense to an adverse possession claim.   At best, they may be attempting to assert a claim based on common law defenses including laches and estoppel.   However, the Vieths do not cite any legal authority discussing those defenses, nor do they develop any argument explaining how the facts of this case would satisfy the elements of these defenses.   As such, we reject the Vieths' arguments about a waiver-based defense as undeveloped. ***State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (declining to address undeveloped arguments because doing so requires the court to serve as both advocate and judge).